# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ASHLEIGH PRUELL and AMY GORDON,
on behalf of themselves and all other
employees similarly situated,

        Plaintiffs,

    v.

CARITAS CHRISTI, CARITAS CHRISTI
NETWORK SERVICES, INC., CARITAS
CARNEY HOSPITAL, INC., CARITAS
GOOD SAMARITAN MEDICAL CENTER,
INC., CARITAS HOLY FAMILY
HOSPITAL, INC., CARITAS NORWOOD
HOSPITAL, INC., CARITAS SOUTHWOOD
HOSPITAL, INC., CARITAS ST.
ELIZABETH'S MEDICAL CENTER OF
BOSTON, INC., CARITAS ST. JOHN OF
GOD HOSPITAL, INC., NORWOOD
HOSPITAL, SAINT ANNE'S HOSPITAL
CORPORATION, RALPH DE LA TORRE,
M.D., RICHARD KROPP, and CARITAS
CHRISTI RETIREMENT PLAN,

        Defendants.

CIVIL ACTION No.  09-CV-11466-GAO

**LEAVE TO FILE MEMORANDUM OF
LAW IN EXCESS OF TWENTY PAGES
GRANTED ON  JANUARY 19, 2010**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants[1] submit this Memorandum of Law in support of their Motion to Dismiss all

counts of the complaint ("Complaint) filed by Ashleigh Pruell and Amy Gordon (together,

"Plaintiffs").  Along with Plaintiffs' companion state law case, which Defendants removed to this

Court on October 16, 2009 (now pending as docket no. 09-CV-11722) (the "State Law Action"),

which Defendants have moved to dismiss, this lawsuit is part of a far-reaching campaign that the

---

[1] The present motion is submitted on behalf of all defendants in the above-captioned action, including Caritas Christi, Caritas Christi Network Services, Inc., Caritas Carney Hospital, Inc., Caritas Good Samaritan Medical Center, Inc., Caritas Holy Family Hospital, Inc., Caritas Norwood Hospital, Inc., Caritas Southwood Hospital, Inc., Caritas St. Elizabeth's Medical Center of Boston, Inc., Caritas St. John of God Hospital, Inc., Norwood Hospital, Saint Anne's Hospital Corporation, Ralph de la Torre, M.D., Richard Kropp, and Caritas Christi Retirement Plan  (together, "Defendants" or "Caritas").

New York law firm of Thomas & Solomon LLP has launched against hospitals around the country.[2]  That campaign has included the filing of a multitude of cookie-cutter complaints, including ten lawsuits filed in the Massachusetts state and federal courts in early September 2009, which are grounded in unfounded speculation and devoid of allegations of any specific facts relating to the Defendants before this Court.[3]  Here, they attempt to spin their familiar asseverations into claims against Caritas under the Fair Labor Standards Act ("FLSA"), derivative claims under the Employee Retirement Income Security Act ("ERISA") and Racketeer Influenced and Corrupt Organizations Act ("RICO"), and a claim they refer to as "estoppel."  Each of these claims fails.  First, Plaintiffs' prolix Complaint, composed of recycled, substanceless assertions, fails to satisfy the pleading standards applicable to each of their claims.  In addition, Plaintiffs' ERISA claims fail – in fact, they are frivolous – because Defendants do not maintain any employee benefits plans subject to ERISA.  Plaintiffs' reckless assertion that Defendants' supposed failure to pay certain wages constitutes a criminal racketeering conspiracy fails because Plaintiffs lack standing to pursue their claims under RICO, and their allegations under that statute suffer from numerous substantive infirmities as well.  Finally, Plaintiffs' count for "estoppel" asserts a cause of action that simply does not exist.  Plaintiffs fail to state a single viable claim, and the Court should dismiss their claims in their entirety.

---

[2] *See* Plaintiffs' counsel's website, [www.hospitalovertime.com](www.hospitalovertime.com).

[3]  In addition to the ten nearly identical cases filed in Massachusetts, Plaintiffs' counsel has filed seven lawsuits in Pittsburgh, three in Philadelphia, and five in New York.  *See Duncheskie v. Temple Univ. Health Sys.*, No. 09-cv-05551 (E.D. Pa. filed Nov. 20, 2009); *Ruff v. Albert Einstein Healthcare Network*, No. 09-cv-05550 (E.D .Pa. filed Nov. 20, 2009); *Frattarola v. Mercy Health Sys.*, No. 09-cv-05533 (E.D. Pa. filed Nov. 20, 2009); *Taylor v. Pittsburg Mercy Health Sys.*, No. 09-006476 (Allegheny Cty. Pa. filed Apr. 2009); *Taylor v. Pittsburg Mercy Health Sys.*, No. 09-cv-0377 (W.D. Pa. filed Mar. 2009); *Camesi v. Univ. Pittsburg Med. Ctr.*, No. 09-006470 (Allegheny Cty. Pa., filed Apr. 2009); *Camesi v. Univ. Pittsburg Med. Ctr.*, No. 09-cv-0085 (W.D. Pa. filed Mar. 2009); *Kuznyetsov v. West Penn Allegheny Health Sys.*, No. 09-006480 (Allegheny Cty. Pa. filed Nov. 2009); *Kuznyetsov v. West Penn Allegheny Health Sys.*, No. 09-cv-0379 (W.D. Pa. filed Mar. 2009); *Gordon v. Kaleida Health*, No. 08-CV-378 (W.D.N.Y. filed May 2008); *Hinterberger v. Catholic Health Sys., Inc.*, No. 08-CV-1221 (W.D.N.Y. filed May 2008); *Hamelin v. Faxton-St. Luke's Healthcare*, No. 08-cv-1219 (N.D.N.Y. filed Nov. 2008); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, No. 08-cv-1220 (N.D.N.Y. filed Nov. 2008); *Fengler v. Crouse Health Found., Inc.*, 08-cv-1221 (N.D.N.Y. filed Nov. 2008).

<u>**BACKGROUND**</u>

**I.   CARITAS CHRISTI**

Caritas Christi is a not-for-profit, community-based hospital network that operates six hospitals in the greater Boston area and employs approximately 12,000 individuals.  The Caritas hospitals collectively hold 1,552 beds and include Carney Hospital in Dorchester, Good Samaritan Medical Center in Brockton, Holy Family Hospital in Methuen, Norwood Hospital in Norwood, Saint Anne's Hospital in Fall River, and St. Elizabeth's Medical Center in Brighton.  The Caritas hospital system is part of the Roman Catholic Archdiocese of Boston's health care ministry in Massachusetts, and it adheres to the Ethical and Religious Directives for Catholic Health Services promulgated by the United States Conference of Catholic Bishops in all aspects of its patient care. Plaintiffs are former employees of Caritas who were paid on an hourly basis.

**I.   THE COMPLAINT**

Plaintiffs filed their Complaint on September 3, 2009, asserting several causes of action on behalf of themselves and others similarly situated, each of which derives from Defendants' alleged failure to pay Plaintiffs for all hours worked.  In their Complaint, Plaintiffs contend that they were wrongfully deprived of remuneration in three ways.  First, they claim that Caritas automatically deducted time from their total hours worked for meal breaks even when they performed work during a meal period.  Complaint ("Compl."), ¶¶ 79-87.  Second, they claim that unnamed "policies, practices and/or [aspects of Caritas's] time recording system" prevented them from recording preliminary and postliminary work performed at the start and conclusion of each shift. Compl., ¶¶ 99-102.  Third, they claim that Caritas failed to pay them for time spent attending "compensable training programs."  Compl., ¶¶ 103-106 .  Plaintiffs claim that this alleged failure to pay wages constitutes a violation of the FLSA, and led to a failure to keep accurate records as well as incorrect calculations of benefits in supposed violation of ERISA.  Compl., ¶¶ 148-153.

They further assert that Caritas engaged in the alleged non-payment of wages "willfully and systematically" as part of a "scheme to cheat Plaintiffs and Class Members out of their property and to convert Plaintiffs' and Class Members' property, including their wages and/or overtime pay" in violation of RICO.  Compl., ¶¶ 123-33, 155-56.  Plaintiffs also maintain that because they claim that Defendants intentionally misled Plaintiffs into believing that they were being properly paid, they are estopped from asserting a statute of limitations defense.  Compl., ¶¶ 137-45, 158.

Defendants moved to consolidate this action with Plaintiffs' State Law Action on November 4, 2009 (docket no. 12), which Plaintiffs opposed solely on the grounds that the action was somehow "premature," *see* Opposition to Motion to Consolidate (docket no. 16), and that motion remains pending.  Defendants' Motion to Dismiss the State Law Action also remains pending. *See* No. 09-cv-11722 (docket no. 10).

**ARGUMENT**

**I.      PLAINTIFFS' COMPLAINT FAILS TO ASSERT FACTS SUFFICIENT TO SATISFY THE APPLICABLE PLEADING STANDARDS**

The claims Plaintiffs assert in their Complaint are subject to the pleading standard established in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).  In addition, the most scandalous claim in Plaintiffs' Complaint, that Defendants engaged in a pattern of racketeering activity in violation of RICO, is subject to the heightened requirements of Federal Rule of Civil Procedure 9(b) and must be pled with particularity.  Despite spanning twenty-five pages and more than 150 numbered paragraphs, Plaintiffs' Complaint is devoid of substance.  Plaintiffs' allegations primarily consist of conclusory assertions that parrot the legal elements of one or more of the five counts of the Complaint.  Such allegations fail to state any viable claim under the pleading standard established by *Twombly* and *Iqbal*, much less the requirements of Rule 9.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Twombly* and *Iqbal*, the Supreme Court announced and refined a new standard by which to measure a plaintiff's compliance with that requirement.  While the Court acknowledged that "detailed factual allegations" are not necessary for a complaint to survive a motion to dismiss, a complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S.Ct. at 1949.   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quotations omitted).  This refined standard is intended to prevent "a plaintiff with a largely groundless claim [from] be[ing] allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value."  *Twombly*, 550 U.S. at 558 (citations and quotations omitted).

In light of the Supreme Court's guidance, "two underlying principles guide [] assessment of the adequacy of [a] plaintiff['s] pleadings."  *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009).  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id*.  Thus, legal conclusions couched as factual allegations need not be given any credence.  *Twombly*, 550 U.S. at 555.  Second, "only a complaint that states a <u>plausible</u> claim for relief survives a motion to dismiss."  *Maldonado*, 568 F.3d at 268 (emphasis added).  To meet this plausibility standard, factual allegations in a plaintiff's complaint must "be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

As demonstrated below, Plaintiffs' conclusory allegations fail to satisfy these pleading requirements.  If Plaintiffs had been subject to any identifiable legal wrong, much less the nefarious conspiracy they attribute to Defendants, they might have shared with the Court a few specifics about their own compensation or experiences as employees of Caritas.  Instead, Plaintiffs' Complaint consists of only vague references to alleged violations of the law, invokes a

5

statute with no application to Caritas or its benefit plans and is nearly devoid of substantive factual

allegations that would ground a plausible claim for relief.  Indeed, on the same day that they filed

the Complaint in this matter, Plaintiffs' counsel filed substantially identical complaints against

every major hospital system in Massachusetts, not pleading facts but reciting the same litany of

unadorned, boilerplate allegations in every case.[4]  To paraphrase Shakespeare, Plaintiffs'

allegations are full of sound and fury, but without factual background sufficient to demonstrate

"more than a sheer possibility that [the] defendant has acted unlawfully," they signify nothing.  *See*

*Iqbal*, 129 S.Ct. at 1949.

    **A.**    **Plaintiffs' Factual Allegations Are Insufficient to Make Their Claims Plausible**

        **1.**    <u>**Plaintiffs Fail to Provide Sufficient Factual Support for Their FLSA**</u>
            <u>**Claims**</u>

      To succeed on their FLSA claims, Plaintiffs must show either that Caritas failed to pay

them at least minimum wage for all hours that they worked, or that they worked more than forty

hours per week and did not receive overtime premium pay for that time.  *See* 29 U.S.C. § 201, *et*

*seq.*  Plaintiffs fail to allege facts to support either type of FLSA claim.  Plaintiffs in fact make no

allegations whatsoever regarding their own employment with Defendants, other than a conclusory

statement that they were "employees under the FLSA."  *See* Compl., ¶ 75.  They fail to allege what

positions they held, in which of Caritas's hospital they worked, or during what period of time they

---

[4] *See Manning v. Boston Med. Ctr. Corp.*,  09-CV-11463 NMG (D. Mass. filed Sept. 3, 2009); *Hamilton v. Partners Healthcare Sys.*, No. 09-CV-11461-DPW (D. Mass. filed Sept. 3, 2009); *Cavallaro v. UMass Mem'l Healthcare Inc.*, No. 09-CV-40152-FDS (D. Mass. filed Sept. 3, 2009); and *Woolfson v. Caregroup, Inc.*, No. 09-CV-11464-JLT (D. Mass. filed Sept. 3, 2009).  In each of these cases, Plaintiffs' counsel filed class action complaints against various institutions in a healthcare system, the chief executive officer of the system, and a senior human resources officer of the system, each containing a nearly verbatim recitation of the same 150-plus numbered paragraphs against each group of defendants and each asserting the same five counts that they assert against Caritas in this matter.

were employed.[5]  Perhaps most importantly, the Court is left to guess the number of hours for which they claim not to have been paid.

Courts applying *Twombly* in the context of claims for overtime under the FLSA have held that a complaint must "at least approximately[] allege the hours worked for which . . . wages were not received" because "simply stating that a Plaintiff was not paid for overtime work does not sufficiently allege a violation of Section 7 of the FLSA."[6]  *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628-30 (S.D.N.Y. 2007); *see also Landry v. Peter Pan Bus Lines*, No. 09-11012 (D. Mass. filed Nov. 20, 2009) (Zobel, J.) (dismissing collective action allegations in FLSA overtime case for failure to meet *Twombly* standard where plaintiff alleged "that an unspecified number of individuals, working in unspecified jobs, at unspecified places, were compensated according to an unspecified policy or practice, resulting in an underpayment of wages") (attached as Exhibit B). The need for specific allegations bears particular importance here because of the remarkably broad swath of employees whom Plaintiffs seek to sweep into a putative class.[7]  Plaintiffs' suggestion that all of these employees performed some unspecified activities for an unstated amount of time

---

[5] This is of particular concern because several of the purported "consent to join" forms that have been filed in this case are signed by individuals as to whom Caritas's employment files reveal no record, and who thus appear never to have worked for Defendants.

[6] To the extent that Plaintiffs claim that Caritas violated the FLSA's minimum wage provisions, those claims also fail. A plaintiff cannot make out a minimum wage violation simply by alleging that he was not paid at his regular rate of pay for a number of hours.  Instead, he must allege facts that, if proven, would demonstrate that as a result of that unpaid time, his effective rate of pay during some period dropped below the statutory minimum.  *See, e.g.*, *Bailey v. Border Foods Inc.*, 2009 WL 3248305, at *2 (D. Minn. 2009) (granting motion to dismiss wage claims because plaintiffs "failed to identify their hourly pay rates . . . or any facts [concerning hours worked and paid] that would permit the Court to infer that Plaintiffs actually received less than minimum wage").  The Complaint fails to meet this standard, as it lacks any information concerning Plaintiffs' pay rates or the number of hours for which they claim not to have been paid.

[7] Plaintiffs identify more than forty positions that they claim to be at issue in this case but provide no basis for a contention that incumbents in all of the listed positions have performed work for which they were not paid.  *See* Compl., ¶ 95.  In fact, some of the categories Plaintiffs recite do not correspond to any position Caritas has maintained in the period at issue.

for which they were not paid is exactly the type of aspirational pleading that fails to meet the *Twombly* standard and demands dismissal.

That Plaintiffs fail to allege any facts regarding their positions, compensation, and hours of work is merely exemplary of the ways in which their statutory claim fails to meet the *Twombly* standard.  For example, Plaintiffs make the conclusory assertion that they were not compensated for preliminary and postliminary work, but they fail to provide any description of the uncompensated "work" they claim to have performed.  Compl., ¶¶ 99-100.  They similarly allege in conclusory fashion that they attended "compensable training programs," without specifying the nature of the training programs attended, when and where they occurred, the voluntariness or job-relatedness of these training programs, or any other allegation creating a plausible inference that these activities may be compensable.[8]  Compl., ¶¶ 103-04.  Each of these allegations must be disregarded as legal conclusions "couched as [] factual allegation[s]."  *Twombly*,  550 U.S. at 555.  Once these conclusions are set aside, Plaintiffs' remaining assertions present no allegations of fact whatsoever to render their claims for allegedly unpaid training time and preliminary and postliminary work plausible.[9]  These claims, therefore, must be dismissed.

---

[8] Not all "training" is compensable work.  Whether employees must be paid for training activities depends on the facts and circumstances of the particular training.  *See* 29 C.F.R. §§ 785.27-785.32 (describing types of training that are compensable and types that are not).

[9] As another glaring example of Plaintiffs' failure to meet the *Twombly* pleading standard, Plaintiffs attribute a number of statements and actions to "defendants' managers," again in conclusory fashion without providing any information as to the identity of those individuals, whether they actually constitute management, or when and to whom such statements were allegedly made.  *See, e.g.*, Compl., ¶ 90 ("Defendants' management have [sic] repeatedly observed Plaintiffs and Class Members working through their unpaid meal breaks."); Compl., ¶ 91 ("Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meal periods.").  That these allegations are mere filler and makeweight is demonstrated further by the fact that Thomas & Solomon includes these same allegations, nearly verbatim, in their complaints against every hospital system that they sue.  *See* complaints, *supra*, at notes 3 and 4.

## 2.    Plaintiffs' RICO Claim Fails To Meet the Heightened Pleading Standard  Required Under Fed. R. Civ. P. 9(b)

Even putting aside the sheer absurdity of pursuing a racketeering claim against a charitable organization that Plaintiffs themselves describe as "engaged in . . . the care of the sick,"[10] Plaintiffs fall dramatically short of adequately pleading claims under RICO.  Where, as here, a plaintiff alleges fraud as the predicate "racketeering activity" of a RICO claim,[11] the claim is subject to Rule 9(b).  *Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 244 (1st Cir. 2006); *DeMauro v. DeMauro*, 2000 WL 231255, at *5 (1st Cir. 2000); *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997); *Feinstein v. Resolution Trust Co.*, 942 F.2d 34, 42 (1st Cir. 1991); *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987); *Mear v. Sun Life Assurance Co. of Canada*, 2008 WL 245217, at *4 (D. Mass. 2008) (Zobel, J.).  "It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave identification of predicate acts for the time of trial."  *Cordero-Hernandez*, 118 F.3d at 244 (quoting *N. Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 43 (1st Cir. 2001)).  Rather, the plaintiff must " state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "As in any other fraud case, the pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud."  *Feinstein*, 942 F.2d at 42.  The failure to plead a RICO claim with sufficient specificity is grounds for dismissal.  *Cordero-Hernandez*, 118 F.3d at 244; *Feinstein*, 942 F.2d at 44.  Furthermore, where there are allegations that multiple Defendants committed the underlying fraud, the plaintiff must particularize the allegations against each

---

[10] Compl., ¶ 18.

[11] *See, e.g.*, Compl., ¶ 156 ("Defendants conducted . . . the enterprise's affairs through a pattern of racketeering by devising a Scheme to obtain Plaintiffs' and Class Members' property by means of false or fraudulent representations, at least some of which were made in the misleading payroll checks which defendants mailed.").

individual defendant.  *See Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 79 (D. Mass. 1998) (Wolf, J.).

Plaintiffs come nowhere close to satisfying their Rule 9(b) pleading obligations.  In support of the mail fraud allegations that underlie their RICO claim, Plaintiffs merely assert that:

> 124. Defendants' Scheme involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive Plaintiffs and Class Members.  The Scheme involved depriving Plaintiffs and Class Members of their lawful entitlement to wages and overtime.
>
> 125. In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs and Class Members or between defendants' business locations.  These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.
>
> 126. The payroll checks were false and deceptive because they misled Plaintiffs and Class Members about the amount of wages to which they were entitled, as well as their status and rights under the FLSA . . . .

Compl, ¶¶ 124-26.  Plaintiffs fail to indentify any elements of a particularized pleading of fraud. Their pleadings are devoid of any mention of the specific content of the representations alleged to be false, the specific time or place of any of the allegedly false mailings, or the identity of the particular defendant or defendants responsible for the alleged fraud or misrepresentation.  *See Feinstein*, 942 F.2d at 42; *Sebago*, 18 F. Supp. 2d at 79.  As a result, Plaintiffs claims must be dismissed.[12]

Plaintiffs also fail to adequately plead the intent requirement of the alleged fraud.  *See U.S.*

---

[12] Although the First Circuit has stated that in some circumstances, discovery may be granted prior to dismissal of RICO claims that fail to meet the requirements of Rule 9(b), such a course is inappropriate here.  Allowing a plaintiff to cure insufficient pleadings under that "second chance" rule is permissible only where the RICO defendant is likely to be the sole party in possession of information about the fraud.  *See, e.g.*, *Cordero-Hernandez*, 449 F.3d at 245 (dismissing RICO claims for failure to satisfy requirements of Rule 9(b) where "[t]here was no showing . . . that the defendants were in exclusive control of any crucial information, and [plaintiff] had not demonstrated a high likelihood that useful information would result from further discovery").  Here, Plaintiffs claim that the fraudulent statements at issue were contained in their own pay stubs.  Compl., ¶¶ 124-27.  Because they indisputably have had access to those documents, this is simply a case where Plaintiffs have "not been diligent in attempting to collect information that would allow them to fully allege a RICO claim."  *Cordero-Hernandez*, 449 F.3d at 244.  Allowing discovery as to Plaintiffs' RICO claim under these circumstances is unnecessary and would be inappropriate.

*v. Sawyer*, 85 F.3d 713, 732 (1st Cir. 1996) (to establish mail fraud, "a demonstrated intent to deceive is required").  Plaintiffs offer numerous hollow legal conclusions with regard to Defendants' supposed mental state, but they provide no factual allegation remotely sufficient to ground an inference that these scandalous charges are plausible.  For example, Plaintiffs allege that Defendants "deliberately misrepresented" the legality of their pay practices, that they "intended to devise . . . a scheme to cheat Plaintiffs and Class Members out of their property," and that they "acted with malice, intent, knowledge, and in reckless disregard of Plaintiffs' and Class Members' rights."  Compl., ¶¶ 112, 116, 123.  However, they identify no actor and no actions that played any part in this alleged malicious conspiracy to steal from thousands of employees, and they do not plead any other facts that would lend plausibility to this element of their RICO claims.  In this manner, Plaintiffs' RICO allegations are insufficient even under the less demanding Rule 8 pleading standard.  *See Iqbal*, 129 S.Ct. at 1952 (where claim requires particular state of mind, pleadings are insufficient where they fail to "contain any factual allegation sufficient to plausibly suggest [the alleged] state of mind").

### 3.   Plaintiffs' ERISA and Estoppel Claims Are Entirely Unsupported

In addition to their FLSA and RICO claims, Plaintiffs assert three additional, derivative claims based on Caritas's alleged failure to pay proper wages.  First, Plaintiffs assert two ERISA claims based on the contention that because Caritas allegedly failed to pay them for all hours that they worked, it also miscalculated certain benefits.  *See* Compl., ¶ 120.  Plaintiffs allege that Caritas's actions constitute a breach of fiduciary duty and violate ERISA's recordkeeping provision.  Even if Caritas's retirement plans were subject to ERISA – which they facially are not – those claims would fail because Plaintiffs have failed to plead them adequately.[13]  Plaintiffs fail to elaborate in any manner on the alleged miscalculation of benefits.  Rather, they plead only that

---

[13] Caritas's retirement plans are "church plans" specifically exempt from ERISA coverage.  *See*, *infra*, Part II.

"defendants' records are legally insufficient to determine benefits." *Id.* As they fail to identify the way in which the records are allegedly insufficient, the benefits that they allege were incorrectly calculated, or the specific legal requirements that they allege were not met, these allegations are entirely too vague and conclusory to support a viable ERISA claim. Also, because Plaintiffs' ERISA claims are premised entirely on a putative FLSA violation, and those FLSA claims fail to meet the *Twombly* and *Iqbal* standards, their ERISA claims must also fail.

Even assuming that Plaintiffs estoppel allegations could be stated as a separate claim – which they cannot – Plaintiffs fail to plead sufficient facts to substantiate their estoppel claim. The doctrine of equitable estoppel requires a showing that the party asserting the estoppel claim reasonably relied on a misrepresentation by the opposing party. *See Mimiya Hosp. Inc. v. U.S. Dep't Health & Human Servs.*, 331 F.3d 178, 182 (1st Cir. 2003). Plaintiffs make vague allegations that "when questioned, the defendants falsely assured Plaintiffs and Class Members that defendants understood federal state and labor laws and . . . were properly paying Plaintiffs and Class Members."[14] They fail to provide any information whatsoever about who made these alleged representations, to whom they were made, or whether the context in which they were made was such that reliance upon the statements was reasonable. Because of the conclusory nature of these allegations, Plaintiffs' estoppel argument also fails under the *Twombly* and *Iqbal* standards.

**B.     Plaintiffs' Claims Against Individual Defendants Ralph de la Torre and Richard Kropp Fail to Satisfy the *Twombly* and *Iqbal* Pleading Standards**

Finally, Plaintiffs' claims against the two individual defendants, Ralph de la Torre, Caritas's President and CEO; and Richard Kropp, Caritas' Senior Vice President for Human Resources, also are insufficient to survive a motion to dismiss. The Complaint surmises that these individuals are liable to Plaintiffs and the class they purport to represent because these individuals

---

[14] Again, Plaintiffs' counsel has made this reckless and disparaging assertion nearly verbatim in all of the lawsuits it has filed against hospital systems around the country. *See* complaints, *supra*, at notes 3 and 4.

– apparently by virtue of assumptions Plaintiffs make from their job titles – have "the authority to

. . . make decisions that concern defendants' operations, including functions related to

employment, human resources, training, payroll and benefits," as well as authority to "make

decisions that concern the policies defendants adopt and the implementation of those policies."

Compl., ¶¶ 28-29, 73.  Plaintiffs disingenuously reason that because these individuals have

"authority" to conduct these activities, they must have been "actively involved" in the decisions at

issue in this case.  Compl., ¶¶ 44-49, 67-71.  These layered, conclusory allegations are not entitled

to a presumption of truth, and the claims against the individual defendants cannot survive.  *See*

*Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.

In *Iqbal*, the Supreme Court dismissed claims against the government officials individually

named in a complaint because the pleadings contained insufficient facts to tie them to the alleged

wrongdoing attributed to the entities they oversaw.  *See* 129 S.Ct. at 1952.   Here, Plaintiffs

similarly identify no facts that could tie the individual defendants to any alleged wrongdoing by

Caritas; instead, they merely rely on their titles at Caritas to infer culpability.[15]  Plaintiffs' counsel

has plied this tactic of making prolix but substanceless allegations against a corporate defendant's

senior officers before, and has seen its complaint rejected for failure to meet the *Twombly* and

*Iqbal* standard.[16]  *See Tracy v. NVR, Inc.*, 2009 WL 3153150,  at *5-6 (W.D.N.Y. 2009) (citing

*Iqbal* and denying motion to amend complaint to add individual defendants as futile because "upon

careful analysis, the complaint asserts little more than because [one] was Chairman and [another]

was President of [the corporate defendant], then each must have had authority to take the actions

---

[15] Apropos of this lack of specificity, Plaintiffs' counsel has crafted nearly <u>identical</u> allegations against individual defendants working for four other hospital systems in this District and numerous hospital systems elsewhere.  *See* complaints, *supra*, at notes 3 and 4.

[16] Indeed, Plaintiffs' factual allegations regarding the individual defendants in this action bear a striking resemblance to the factual allegations rejected as conclusory in the *Tracy* case, which concerns individuals working in an entirely different industry.  *See Tracy*, 2009 WL 3153150, at *5-6.

that comprise the [test for employer status under the FLSA], and that because each had the authority to take those actions, then each must have in fact taken those actions"), *aff'd* 2009 WL 3647862 (W.D.N.Y. Nov. 5, 2009).[17]   There is no reason for the result to be different here, and the Court should dismiss Dr. de la Torre and Mr. Kropp from this action.

## II.   THE COURT MUST DISMISS PLAINTIFFS' ERISA CLAIMS BECAUSE CARITAS'S BENEFIT PLANS ARE CHURCH PLANS EXEMPT FROM ERISA COVERAGE.

Further demonstrating the failure by Plaintiffs' counsel to conduct a reasonable inquiry into the claims they have asserted in this matter, the Complaint simply assumes that Caritas maintains benefit plans regulated by ERISA.  *See* Compl., ¶¶ 118-21.  Caritas, however, is an affiliate of the Roman Catholic Church and maintains church plans that are exempt from ERISA coverage.[18]  *See* 29 U.S.C. § 1003(b)(2) ("The provisions of [ERISA] shall not apply to any employee benefit plan if . . . such plan is a church plan . . . with respect to which no election has been made under section 410(d) of Title 26."); *see also* Caritas Christi Retirement Savings Plan, at p. 1 ("This Plan is a "church plan" within the meaning of Section 3(33) of the Employee Retirement Income Security Act of 1974, as amended, and as such is exempt from the provisions of such Act.") (attached as Exhibit 1 to Affidavit of Barry Miller ("Miller Aff."), attached hereto as Exhibit A).[19]  Defendants' counsel informed Plaintiffs that the plan is an ERISA-exempt church plan months ago, and

---

[17] In *Tracy*, the District Court also rejected the plaintiffs' attempt to pursue claims against a senior human resources officer as an individual defendant.  The court held that the plaintiffs' "boilerplate allegations that [the officer met] the various prongs of the [FLSA's] economic reality test stated solely upon information and belief and without any supporting details" were "insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA." 2009 WL 3647862, at *5-6 (W.D.N.Y. Nov. 5, 2009).

[18] Church plans are exempt from ERISA coverage unless the entity that maintains the plan formally makes an election pursuant to 26 U.S.C. § 401(d).  29 U.S.C § 1003(b)(2).  Plaintiffs have not alleged – and Caritas has not made – any such election.

[19] Because Plaintiffs refer to Caritas's retirement plan in their Complaint, the Court may consider that document in addressing the motion to dismiss as it is deemed to be incorporated into the Complaint.  *See Giragosian v. Ryan*,  547 F.3d 59, 65 (1st Cir. 2008) (district court may consider documents incorporated by reference in the complaint); *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 20 (1st Cir.2003) (same).

Plaintiffs have done nothing to disagree with or otherwise respond to that information.  *See* Letter Dated October 27, 2009 (attached as Exhibit 2 to Miller Aff.).

There is no question that Caritas Christi's benefit plans are church plans.  A plan qualifies as a church plan – and is exempt from ERISA – if it is established and maintained for the employees of a "church."  29 US.C. § 1002(33)(A).  ERISA provides that a person is an employee of a "church" if he or she is "an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of title 26 and which is controlled by or associated with a church or a convention or association of churches."  29 U.S.C. § 1002(33)(C)(ii).[20]  In turn, an organization is "associated with a church" if it shares "common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv); *see also Lown v. Cont'l Cas. Co.*, 238 F.3d 543, 547 (4th Cir. 2001) (finding plan not to be a church plan because the employer had severed its ties with the church before the relevant time).  Caritas Christi's stated purpose is:

> "[t]o fulfill the health care mission of the Roman Catholic Church in accordance with the teachings of the Church as enunciated by the Holy Father and the Bishops in communion with him."

Caritas Christi Articles of Organization (attached as Exhibit 4 to Miller Aff.).[21]  Moreover, the organization's incorporators included then-Archbishop of Boston, Bernard F. Law; and then-

---

[20] The Internal Revenue Service recognizes Caritas as a tax-exempt organization pursuant to section 501(c)(3) of the internal revenue code by virtue of its inclusion in *The Official Catholic Directory*.  *See* IRS Group Exemption No. 0928 (attached as Exhibit 3 to Miller Aff.).  Because it is a matter of public record, the Court may take judicial notice this group exemption.  *See Colonial Mortgage*, 324 F.3d at 16 (courts may "go outside the margins of the complaint proper" and look to "matters of public record, and other matters of which the court may take judicial notice" in addressing motion to dismiss).

[21] In ruling on this motion to dismiss, the Court may take judicial notice of Caritas's Articles of Organization, as it is a publicly filed document available through the Commonwealth of Massachusetts' Secretary of State's Corporations Division.  *See, e.g., Colonial Mortgage*, 324 F.3d at 16; *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763 (D. Ariz. 2009) (taking judicial notice of publicly filed articles of incorporation in addressing motion to dismiss because "such filings are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned ") (quotations omitted); *Banks v. Allegheny*, 2007 WL 2905726, at *2 (W.D. Pa. 2007) (in addressing motion to dismiss, "the court may take judicial notice of the [parties' publicly filed] Articles of Incorporation.").

Auxiliary Bishop of Boston, Daniel A. Hart.  *Id.*  Clearly, Caritas is "associated with" the Roman

Catholic Church in Boston and, therefore, the Caritas Christi Retirement Plan is exempt from

ERISA regulation.  *See* 29 U.S.C. § 1002(33)(C)(iv); *Rinehart v. Life Ins. Co. of North America*,

2009 WL 995715, at * 4-5 (W.D. Wash. 2009) (holding that benefit plan sponsored by Catholic

health system qualified as church plan); *Catholic Charities of Maine, Inc. v. City of Portland*, 304

F. Supp. 2d 77, 85 (D. Me. 2004) (social services organization held to be "associated with" Roman

Catholic Church where organization maintained financial ties to Roman Catholic Diocese of

Maine and stated that it provided services "based on Roman Catholic religious teaching that calls

on Catholics to serve those in need.")  Accordingly, this Court must dismiss Plaintiffs' ERISA

claims, and should dismiss the Caritas Christi Retirement Plan from this action.

## III.   THE COURT SHOULD DISMISS PLAINTIFFS' RICO COUNT FOR FAILURE TO STATE A CLAIM

With their RICO claim, Plaintiffs pursue a draconian remedy for what is, at most, a garden-

variety wage dispute.  The civil RICO statute is "quasi-criminal in nature," and thus, as the First

Circuit has recognized, "[c]ivil RICO is an unusually potent weapon – the litigation equivalent of a

thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its

consummation can be costly."[22]  *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991);

*Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *see also Sys. Mgmt., Inc. v. Loiselle*,

303 F.3d 100, 105 (1st Cir. 2002) (noting that "the Supreme Court has recoiled at the idea of a

federal civil remedy [under the RICO statute], with treble damages and attorney's fees, [for acts

that] . . . would never be pursued criminally by a competent prosecutor, let alone through a

---

[22] In addition to inflicting reputational damage, Plaintiffs' RICO claim may potentially expand the applicable statute of limitations to four years and treble the amount of damages available.  *See* 18 U.S.C. § 1964 (authorizing treble damages for civil RICO violations); *Rodriguez v. Banco Ctl.*, 917 F.2d 664, 665 (1st Cir. 1990) (holding that four-year statute of limitations applies to RICO claims).  The FLSA has a maximum three-year statute of limitations for willful violations, and the maximum damages recoverable are double damages (compensatory damages plus liquidated damages of the same amount).  *See* 29 U.S.C. § 216(b).

criminal RICO prosecution.").   Because of the serious consequences that attend even the mere

allegation of a RICO violation, it is important for courts to dispose of unmeritorious RICO claims

as early as possible in a case.   *See Wilkes v. City of Rochester*, 1998 WL 1085789, at *1 (1st Cir.

1998) (noting "need to flush out at an early stage meritless RICO and civil rights claims since the

mere assertion of these claims often has a stigmatizing effect on those named as defendants")

(quotations omitted); *Figueroa Ruiz*, 896 F.2d at 650 ("In fairness to innocent parties, courts

should strive to flush out frivolous RICO allegations at an early stage of the litigation.") (citations

and quotations omitted).   Courts closely scrutinize RICO claims, particularly those based on

allegations of mail fraud, "because of the relative ease with which a plaintiff may mold a RICO

pattern from allegations that, upon closer scrutiny, do not support it."   *Efron v. Embassy Suites*

*(Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000).   Plaintiffs' RICO allegations here are baseless

and cannot withstand the level of scrutiny applied to such claims.   Plaintiffs lack statutory standing

to pursue a claim under the RICO statute, and they fail to adequately plead the elements necessary

to establish their RICO allegations.   Moreover, Plaintiffs' potential remedies under the FLSA are

more than adequate, even if they can somehow prove – and they cannot – that Defendants acted

willfully or in bad faith.   *See* 29 U.S.C. § 216(b) (providing expanded three-year statute of

limitations and multiple damages for willful violations).   For these reasons, Plaintiffs' RICO

claims should be dismissed.

### A.      Plaintiffs Lack Statutory Standing To Pursue Their RICO Claims

Plaintiffs lack statutory standing to assert a claim under RICO because they cannot

demonstrate that they were directly harmed by Defendants' supposed commission of a RICO

predicate act.   In order to establish statutory standing to assert a civil RICO claim, a plaintiff must

first show that he personally has been "injured in his business or property by reason of [the

defendant's] violation" of the RICO statute's criminal provisions.[23]  *See* 18 U.S.C. § 1964(c);

*Pujol v. Shearson/Am. Express, Inc.*, 829 F.2d 1201, 1205 (1st Cir. 1987).  To satisfy this test, the

plaintiff's injury must be proximately caused by "an act that is independently wrongful under

RICO." *Beck v. Prupris*, 529 U.S. 494, 505-06 (2000) (further stating that "injury caused by an

overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient

to give rise to a cause of action under § 1964(c)"); s*ee also George Lussier Enter. Inc. v. Subaru of

New England*, 393 F.3d 36, 51 (1st Cir. 2004) ("To have standing in a civil RICO claim, plaintiffs

must show some direct relation between the injury asserted and the injurious conduct alleged.

Plaintiffs may not succeed merely by proving that the predicate acts were a 'cause in fact' of the

plaintiffs' injuries; rather, Section 1964(c) requires that the defendant's specified acts of

racketeering were the proximate cause of the plaintiffs' injuries.") (internal citations and

quotations omitted); *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir. 1996) ("[T]he plaintiff only

has standing if, and can only recover to the extent that, he has been injured in his business or

property by the conduct constituting the violation.") (quoting *Sedima v. Imrex Co.*, 473 U.S. 479,

496 (1985)).

The thrust of Plaintiffs' Complaint is that they were injured as a result of Caritas's

allegedly improper practices with regard to calculation of time worked and wages due.  *See*

Compl., ¶ 156 ("Defendants' conduct, and the conduct of other members of the enterprise, injured

Plaintiffs and Class members by refusing [sic] to pay their regular or statutorily required rate of

pay for all hours worked."); Compl., ¶ 123 ("Defendants' Scheme consisted of illegally, willfully

and systematically withholding or refusing to pay Plaintiffs and Class Members their regular or

statutorily required rate of pay."); Compl., ¶¶ 79-106 (describing allegations regarding failure to

---

[23] The statute defines racketeering activity as "any act which is indictable" under certain enumerated federal criminal statutes. 18 U.S.C. § 1961.

include work performed during meal breaks, pre- and post-shift work, and training time in wage calculations).  Fair Labor Standards Act violations, however, are not RICO predicate acts, and thus alleged harm arising from such violations cannot give rise to standing under RICO.  *See* 18 U.S.C. § 1961 (defining "racketeering" activity); *Beck*, 529 U.S. at 505 (injuries not caused by racketeering acts cannot give rise to standing under RICO).  Accordingly, in an attempt to circumvent the predicate act requirement, Plaintiffs attempt to cloak their wage claims in mail fraud clothing, asserting that Caritas committed racketeering acts by "mailing [] misleading payroll checks" in furtherance of "a scheme to cheat Plaintiffs and Class Members out of their property . . . including their wages and/or overtime pay."  *See* Compl., ¶¶ 123, 127.

Plaintiffs' RICO claim fails, however, because they allege only that Caritas used the mails to conceal wage and hour violations, and they make no claim that Defendants' use of the mail caused them any independent harm.  *See* Compl., ¶ 111 ("[t]hrough the paystubs and payroll information it provided to employees, Caritas <u>concealed</u> from its employees that they did not receive compensation for all the work they performed") (emphasis added); Compl., ¶ 113 ("defendants engaged in such conduct . . . to <u>conceal</u> from the Plaintiffs and Class Members their rights and to frustrate the vindication of employees' federal rights") (emphasis added).[24]  In the First Circuit, it is clear that mail fraud conducted for the purpose of concealing other wrongful acts cannot proximately cause injury, and thus cannot ground a civil RICO action.  *See George Lussier*, 393 F.3d at 52 (holding that allegations that car distributor committed mail fraud for "fraudulent concealment" of scheme to make dealers purchase vehicles with unwanted options insufficient to confer standing to assert RICO claim); *see also Leung v. Law*, 387 F. Supp. 2d 105, 122 (E.D.N.Y.

---

[24] Plaintiffs assert in conclusory fashion that the "misleading payroll checks that defendants mailed . . . were a proximate cause of Plaintiffs' and Class Members' injuries," Compl., ¶ 126. This bald assertion is insufficient to ground their claim.  *See Twombly*, 550 U.S. at 555 (requiring "more than labels and conclusions" to ground a complaint).  Plaintiffs provide no explanation as to how these documents allegedly caused them injury except to state that the documents concealed Caritas's other supposed wrongdoing.

2005) (mail fraud consisting of mailing of fraudulent tax returns to conceal theft of money from partnership "may have concealed, but did not cause, [plaintiff's] losses" and thus did not confer standing; *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 587 (S.D.N.Y. 1995) (allegation that plaintiffs' "ability to discover and/or prevent defendants' other wrongful acts was somewhat impaired or limited" as result of mail and wire fraud did not confer standing because "[a]n act which proximately caused an injury is analytically distinct from one which furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act"); *Zee-Bar, Inc. v. Kaplan*, 792 F. Supp. 895, 905 (D.N.H. 1992) (where plaintiff alleged that defendant committed mail fraud by mailing fraudulent tax returns "[the defendant] may have forged the returns to cover negligence, but it is the negligence and not the forgery from which the injury flows").[25]

Put somewhat differently, any injury Plaintiffs suffered resulted from the alleged failure to include certain hours worked in calculating their pay. Such acts necessarily would have occurred *prior to and separate from* the mailing of the allegedly fraudulent pay checks. The mailing thus cannot serve as the proximate cause of Plaintiffs' alleged injury. *See*, *e.g.*, *U.S. v. Christopher*, 142 F.3d 46, 53 (1st Cir. 1998) (distinguishing case where alleged mail fraud scheme "followed the loss" and noting that, in such case, mail fraud could not be established because deceptive conduct did not cause plaintiffs' injury). Plaintiffs thus lack statutory standing to assert a RICO cause of action, and their claim must be dismissed.

---

[25] One case from the Eastern District of Virginia has held that allegations similar to those asserted by Plaintiffs were sufficient to ground a RICO claim where the alleged mail fraud "lulled" plaintiffs into believing that their pay had been properly calculated. *See Choimbol v. Fairfield Resort*, 428 F. Supp. 2d 437, 445 (E.D. Va. 2006). Even if properly decided under Fourth Circuit law – which is not at all clear – that decision conflicts with the First Circuit's determination in *George Lussier* that mail fraud that conceals other wrongs cannot act as the proximate cause of an injury and thus is insufficient to confer standing. *See* 393 F.3d at 51.

### B.      Plaintiffs Cannot Establish The Predicate Racketeering Act of Mail Fraud

Even if Plaintiffs could establish standing to pursue their RICO allegations, Plaintiffs'

RICO claim would nonetheless fail because Plaintiffs do not adequately plead a predicate

racketeering act.[26]   Plaintiffs base their RICO claim upon allegations that Caritas committed mail

fraud by mailing pay statements to its employees that misstated the hours that they worked.

Compl., ¶¶ 124-27.   Plaintiffs fail to appreciate, however, that "not every use of the mails or wires

in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud.

Rather, the scheme must be intended to *deceive* another, by means of false or fraudulent pretenses,

representations, promises, or other deceptive conduct."   *McEvoy Travel Bureau, Inc. v. Heritage*

*Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) (citations omitted) (emphasis in original); *see also*

*Sawyer*, 85 F.3d at 732 (To establish mail fraud, "a demonstrated intent to deceive is required.").

In order to constitute illegal mail fraud, a scheme must be "calculated to deceive persons of

ordinary prudence."   *McEvoy*, 904 F.2d at 791-92 (quoting *U.S. v. Bohonus*, 628 F.2d 1167, 1172

(9th Cir. 1980)).   Where mail fraud allegations are premised on the mailing of documents that the

sender should know will not deceive a recipient of ordinary prudence, there can be no intent to

deceive, and no violation of the mail fraud statute can result.   *Sosa v. DIRECTV, Inc.*, 437 F.3d

923, 941 (9th Cir. 2006) (granting motion to dismiss RICO claim because "letters cannot amount

to mail fraud [] where the sender knows the recipient will not be deceived by the falsehoods");

*McGee v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2132439, at *6 (E.D.N.Y. 2009) (granting

motion to dismiss RICO mail fraud claims because allegedly false insurance reports could not be

"calculated to deceive" plaintiff doctor seeking insurance reimbursement, as doctor "kn[ew] full

---

[26] In the absence of any viable claim that Defendants committed a predicate racketeering act, Plaintiffs' RICO claim must fail.  *See*, *e.g.*, *McEvoy*, 904 F.2d at 794 ("Since [plaintiff's] complaint does not sufficiently allege a scheme to defraud anyone of money or property within the meaning of the mail and wire fraud statutes, the complaint fails to allege even a single predicate act of racketeering activity, and *a fortiori* fails to allege a pattern of racketeering activity as is required under RICO.")

well [] his own patients' true condition"); *see also U.S. v. Pendergraft*, 297 F.3d 1198, 1209 (11th

Cir. 2002) (reversing mail fraud conviction because defendants "knew that they could not deceive

[the recipient of the allegedly fraudulent mailings]" and thus "they could not have had an intent to

deceive").

Even if Plaintiffs were somehow to prove that Caritas intentionally misstated the hours

Plaintiffs worked in their pay statements, such acts would fail to constitute mail fraud.  Plaintiffs

knew full well how much time they spent performing their jobs because they performed this work

themselves.  A person of ordinary prudence necessarily cannot be deceived as to his or her own

conduct.  *See Sosa*, 437 F.3d at 941 ("Because these statements concerned Sosa's <u>own conduct</u>,

[the defendant] could not have intended that he would be deceived by them and was therefore

necessarily lacking in the intent requisite to have committed wire fraud.") (emphasis added);

*Pendergraft*, 297 F.3d at 1209 (mailing affidavits falsely accusing recipient of threatening conduct

could not constitute mail fraud because senders "were aware of [the recipient's] position [that he

had not made threats] . . . and they knew their affidavits would not trick [the recipient] into

admitting otherwise").  Defendants thus lacked the intent to deceive required to establish mail

fraud.

## C.    Plaintiffs Fail To Allege a Distinct RICO Person and RICO Entity

Plaintiffs' RICO claim also should be dismissed because Plaintiffs cannot identify a

"RICO Enterprise" that is distinct from the named RICO defendants.  Plaintiffs apparently seek to

hold Defendants liable under § 1962(c) of RICO.[27]  The purpose of this section is twofold: first, it

---

[27]Plaintiffs fail to identify the specific section of the RICO statute that they claim Caritas has violated.  As their Fourth Cause of Action, however, Plaintiffs state that "Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity . . . ."  Compl., ¶ 156.  This assertion tracks the language of § 1962(c), and thus it appears that their allegations arise under that section.  To the extent that they attempt to assert claims pursuant to any other section, they fail even to plead the basic elements of such a claim.  For example, Plaintiffs mention § 1962(a) in passing in the Complaint, but they cannot establish a violation of this section because they have not alleged that any of the Defendants have "use[d] or invest[ed], directly or indirectly, any [income derived from racketeering activity] in acquisition of any interest in, or the establishment or operation of, any enterprise

protects legitimate businesses from "those who would use unlawful acts to victimize" them, and second, it "protects the public from those who unlawfully use an enterprise (whether legitimate or illegitimate) as a vehicle through which unlawful activity is committed." *Cedric Kushner Promotions., Ltd. v. King*, 533 U.S. 158, 164 (2001) (quotations omitted).  The provision makes it unlawful for "[a]ny person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To establish a violation of that provision, a plaintiff "must allege and prove the existence of two distinct entities: (1) a person [who is the RICO defendant]; and (2) an enterprise that is not simply the same person referred to by a different name."  *Cedric Kushner*, 533 U.S. at 161; *Bessette v. Avco Fin. Servs., Inc*., 230 F.3d 439, 448 (1st Cir. 2000).  Courts have premised this well established standard on the statute's requirement that the culpable person be "employed by or associated with an enterprise" and the common sense notion that a party cannot "be employed by or associated with itself."  *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 31 (1st Cir. 1986).  Thus, the same entity "cannot do double duty as both the RICO defendant and the RICO enterprise."  *Miranda*, 948 F.2d at 44. Thus, to state a proper RICO claim, a complaint must allege that the RICO defendant is "sufficiently distinct" from the RICO enterprise whose affairs it has allegedly conducted in an illegal manner.  *Mear*, 2008 WL 245217, at *8.

Plaintiffs cannot meet this requirement. As a preliminary matter, the Complaint identifies each of the Defendants as RICO "persons," but it fails to specifically identify the enterprise whose

---

which is engaged in, or the activities of which affect, interstate or foreign commerce." *See* Compl., ¶ 132; 18 U.S.C. § 1962(a).

affairs they allegedly have conducted in an illegal manner.[28]  *See* Compl., ¶ 131-33.  This lapse

alone is fatal to Plaintiffs' RICO claims.  In the First Circuit, a plaintiff must be able to point to a

<u>specific</u> entity that fills this role in order to state a claim under § 1962(c).  *See Doyle*, 103 F.3d at

191 ("Although the amended complaint alleges the existence of an enterprise, it never squarely

identifies one. . . . The complaint's failure to identify any enterprise, distinct from a named person

defendant, is fatal under RICO.") (citations omitted).  Where a plaintiff fails to designate the

enterprise that is the subject of his RICO claim, the Court should not "rewrite the complaint

language in order to find that plaintiffs sufficiently identified . . . a RICO enterprise."  *Id.*

Even given the most generous reading possible, Plaintiffs' RICO count still could not

succeed.  As Plaintiffs have framed their Complaint, there is <u>no</u> entity sufficiently distinct from the

RICO defendants that it could possibly serve as the RICO enterprise.  Plaintiffs pursue their RICO

claims against all of "the Named Defendants, the Health Centers, and the Affiliates."  Compl., ¶

17.  They also identify each Defendant as  "a 'person' within the meaning of 18 U.S.C. §§1961(3)

and 1962(c)."  Compl., ¶ 131.  In addition, Plaintiffs specifically allege that each of these parties

are "alter egos of each other."  Compl., ¶ 25.  The effect of these allegations is that none of the

entities referenced in the Complaint, nor any combination of those entities, is sufficiently distinct

from the named RICO "persons" to constitute a RICO enterprise.

For example, if Plaintiffs were to name Caritas Christi as the RICO enterprise, their claim

would fail because that entity is also specifically named as a RICO person.  *See Doyle*, 103 F.3d at

191 ("[T]he possibility that plaintiffs considered Hasbro the 'enterprise' is undermined by the

---

[28] Plaintiffs do assert that "Caritas is an enterprise engaged in the operation of a hospital and/or the care of the sick." *See* Compl., ¶ 18.  Simply employing the term "enterprise," however, is not sufficient to ground a RICO claim.  To state a claim pursuant to § 1962(c), a plaintiff must allege that the enterprise's affairs have been conducted through a pattern of racketeering activity by the RICO defendants. *See* 18 U.S.C § 1962(c); *Doyle*, 103 F.3d at 191.  Plaintiffs do not assert  in their Complaint that Caritas is the entity whose affairs have been conducted in an illegal manner. Moreover, as described below, Caritas could not serve as a RICO enterprise – even if Plaintiffs had specifically named it as one – because it is also a named RICO defendant.

complaint's repeated contention that Hasbro is a RICO 'person.'  A RICO person cannot also serve as the RICO enterprise that the person is allegedly conducting in violation of section 1962(c).").  That entity is also insufficiently distinct from the other named RICO persons, as Plaintiffs have expressly alleged each of the other Defendants to be an "alter ego" of it.  Compl., ¶ 25.  Moreover, courts in this District have held that employees, subsidiaries, and agents of a corporation are not sufficiently distinct from the corporation to satisfy the requirement of a separate RICO person and enterprise.[29]  *See Mear*, 2008 WL 245217, at *9 ("Because . . . a corporation[] can only act through its employees, officers, subsidiaries and agents, the former is not distinct from the latter for the purpose of distinguishing a RICO person from a RICO enterprise."); *see also Besette*, 230 F.3d at 449 ("a subsidiary that simply conducts its affairs as delegated by the parent company for the profit of the parent company is engaged in nothing more than a legitimate corporate and financial relationship, which is certainly not subject to RICO liability").  Plaintiffs have, therefore, failed to identify a RICO enterprise that the RICO persons they have sued allegedly corrupted, and their RICO claim must be dismissed.

## IV.   THE COURT SHOULD DISMISS PLAINTIFFS' ESTOPPEL CLAIM

As their fifth cause of action, Plaintiffs attempt to assert a claim of "estoppel."  Compl., ¶ 158.  This claim should be dismissed because Plaintiffs misconstrue the nature of the estoppel doctrine.  Equitable estoppel is purely a defensive concept: "It is available only for protection, and <u>cannot be used as a weapon of assault</u>.  *Dickerson v. Colgrove*, 100 U.S. 578, 580-81 (1879) (emphasis added); *see also Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, 2009 WL

---

[29] Any assertion that the enterprise to which the Complaint ambiguously refers consists of some conglomeration of the hospitals, their employees and their agents would prove similarly faulty.  As the Supreme Court has acknowledged, a "claim that a corporation [is] the 'person' and the corporation, together with all its employees and agents [is] the 'enterprise'" is suspect because it is not "natural to speak of a corporation as 'employed by' or 'associated with' this latter oddly constructed entity."  *Cedric Kushner Promotions*, 522 U.S. at 164.

2175585, at *8 (W.D. Pa. 2009) ("estoppel serves as a shield and not a sword").[30]  Numerous

courts have recognized that because it cannot be used offensively, estoppel does not – indeed,

cannot – give rise to a cause of action.  *See Val-Land Farms, Inc., v. Third Nat'l Bank in Knoxville*,

937 F.2d 1110, 1115 (6th Cir. 1991) ("[E]quitable estoppel does not create a cause of action under

Tennessee law."); *Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, LLC*, 176 P.3d

737, 741 (Colo. 2007) ("[T]he doctrine of equitable estoppel is not a cause of action at all, but

rather a defensive doctrine"); *Hoye v. Westfield Ins. Co.*, 487 N.W.2d 838, 842 (Mich. 1992) ("the

general rule is that equitable estoppel is a doctrine, not a cause of action . . . . [and it] therefore

provides no remedy such as damages"); *see also Adrian v. Mesirow Fin. Structured Settlements*,

LLC, 2009 WL 2596508, at *1 n.3 (D.P.R. 2009) ("Plaintiff seems to confuse theories of liability

with other sorts of assertions in her amended complaint: she lists as [a] claim . . . 'equitable

estoppel' [which is a] common theor[y] of defense.").  By its very nature, Plaintiffs' estoppel

"cause of action" fails to state a claim upon which relief may be granted, and for that reason it

must be dismissed.[31]

---

[30] Plaintiffs' counsel has failed in asserting this argument before; *Kuznyetsov* is another case it has filed in its campaign against hospitals.  *See* 2009 WL 2175585, at *8 (W.D. Pa. 2009).

[31] Even if estoppel were cognizable as a cause of action – which it is not – Plaintiffs' estoppel claim would fail because Plaintiffs have not pleaded an element of that doctrine. A party may only take advantage of the doctrine where it demonstrates that "(1) the party to be estopped made a definite misrepresentation of fact to another person having reason to believe that the other would rely upon it; (2) the party seeking estoppel relied on the misrepresentations to its detriment; and (3) the reliance was reasonable." *Mimiya.*, 331 F.3d at 182 (quotations omitted); *see also Safe Environment of Am., Inc, v. Employers Ins. of Wausau*, 278 F. Supp. 2d 121, 126-27 (D. Mass. 2003).  Detrimental reliance requires a party to demonstrate that it has suffered harm as a result of the reliance. *Mimiya*, 331 F.3d at 182. Plaintiffs fail to assert that they have suffered any harm as a result of Defendants' alleged misrepresentations, but rather that they may be harmed in the future if Defendants assert a statute of limitations defense.  Plaintiffs' claim is thus premature.  In addition, to the extent that the Court dismisses Plaintiffs' other claims, it will be moot.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted in its entirety.

Respectfully submitted,

CARITAS CHRISTI, CARITAS CHRISTI
NETWORK SERVICES, INC., CARITAS
CARNEY HOSPITAL, INC., CARITAS
GOOD SAMARITAN MEDICAL CENTER,
INC., CARITAS HOLY FAMILY HOSPITAL,
INC., CARITAS NORWOOD HOSPITAL,
INC., CARITAS SOUTHWOOD HOSPITAL,
INC., CARITAS ST. ELIZABETH'S
MEDICAL CENTER OF BOSTON, INC.,
CARITAS ST. JOHN OF GOD HOSPITAL,
INC., NORWOOD HOSPITAL, SAINT
ANNE'S HOSPITAL CORPORATION,
RALPH DE LA TORRE, RICHARD KROPP
and CARITAS CHRISTI RETIREMENT
PLAN,

By their attorneys,

 /s/ Richard L. Alfred
Richard L. Alfred (BBO # 015000)
Barry Miller (BBO # 661596)
Krista G. Pratt (BBO # 644741)
Sarah N. Turner (BBO # 664488)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:      (617) 946-4800
DATED: January 20, 2010          Telecopier:     (617) 946-4801

---

### CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2010, this document was filed through the
Court's ECF system and that Plaintiffs' counsel includes registered users
designated to receive Notices of Electronic Filings in this matter.

 /s/ Richard L. Alfred
Richard L. Alfred

---

BO1 16013742.5