# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ASHLEIGH PRUELL and AMY GORDON, on behalf of themselves and all other employees similarly situated,

Plaintiffs,

v.

CARITAS CHRISTI, CARITAS CHRISTI NETWORK SERVICES, INC., CARITAS CARNEY HOSPITAL, INC., CARITAS GOOD SAMARITAN MEDICAL CENTER, INC., CARITAS HOLY FAMILY HOSPITAL, INC., CARITAS NORWOOD HOSPITAL, INC., CARITAS SOUTHWOOD HOSPITAL, INC., CARITAS ST. ELIZABETH'S MEDICAL CENTER OF BOSTON, INC., CARITAS ST. JOHN OF GOD HOSPITAL, INC., NORWOOD HOSPITAL, SAINT ANNE'S HOSPITAL CORPORATION, RALPH DE LA TORRE, M.D., RICHARD KROPP, and CARITAS CHRISTI RETIREMENT PLAN,

Defendants.

CIVIL ACTION NO.  09-CV-11466-GAO

**LEAVE TO FILE MEMORANDUM OF LAW IN EXCESS OF TWENTY PAGES GRANTED ON NOVEMBER 9, 2010**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants[1] submit this Memorandum of Law in support of their Motion to Dismiss all counts of the Amended Complaint (docket no. 33) ("Amended Complaint") filed by Ashleigh Pruell and Amy Gordon (together, "Plaintiffs").  In an Opinion and Order dated September 27, 2010 ("Order"), this Court dismissed all five counts of Plaintiffs' original Complaint for failure to plead facts sufficient to lend plausibility to their claims against Defendants (docket no. 31).  The Court granted Plaintiffs' request for leave to re-plead their claims in the event that their Complaint was dismissed.  Plaintiffs filed an Amended Complaint on October 18, 2010.  That pleading does not represent a serious attempt to cure

---

[1] The present motion is submitted on behalf of all defendants in the above-captioned action, including Caritas Christi, Caritas Christi Network Services, Inc., Caritas Carney Hospital, Inc., Caritas Good Samaritan Medical Center, Inc., Caritas Holy Family Hospital, Inc., Caritas Norwood Hospital, Inc., Caritas Southwood Hospital, Inc., Caritas St. Elizabeth's Medical Center of Boston, Inc., Caritas St. John of God Hospital, Inc., Norwood Hospital, Saint Anne's Hospital Corporation, Ralph de la Torre, M.D., Richard Kropp, and Caritas Christi Retirement Plan  (together, "Defendants" or "Caritas").

the defects noted in the Court's ruling on Defendants' prior motion to dismiss.  In fact, the Amended

Complaint is virtually identical to Plaintiffs' initial Complaint.[2]  Of the 166 paragraphs in the Amended

Complaint, 158 are copied verbatim or nearly verbatim from Plaintiffs' original Complaint.  Of the eight

new paragraphs in the Amended Complaint, only two relate to the Fair Labor Standards Act ("FLSA")

claims that the Court specifically held to be inadequate in its September 27 Order.  Like the original

Complaint and every other complaint in Plaintiffs' counsel's hospitalovertime.com campaign, the

Amended Complaint is entirely devoid of any specific facts about Plaintiffs or their employment with

any of Defendants.  Plaintiffs persist in their assertion that they can survive a motion to dismiss by

pleading general, conclusory allegations about the fourteen defendants and the forty job positions at

issue, even after the dismissal of their original Complaint.  Moreover, Plaintiffs have left their ERISA,

RICO, and estoppel claims virtually unaltered, and each of those claims continues to suffer the same

substantive infirmities that Defendants noted in their original motion to dismiss.[3]  In light of Plaintiffs'

failure even to attempt to rectify any of the deficiencies of their original Complaint, their claims now

should be dismissed in their entirety and with prejudice and without leave to further amend.  Indeed, by

requesting leave to re-plead the vaporous claims in their original Complaint, failing to make an effort to

add substance to their Amended Complaint, and forcing Defendants and the Court to revisit the obvious

deficiencies in Plaintiffs' prolix pleading, Plaintiffs have squandered the resources of Defendants and

the Court.

### BACKGROUND

Caritas Christi is a community-based hospital network that operates six hospitals in the greater

Boston area.  The Caritas hospital system operates as a Catholic faith-based health care system

---

[2] A redline comparison of the original Complaint and the Amended Complaint ("Redline") is attached as Exhibit 1 to Affidavit of Barry Miller ("Miller Aff."), attached hereto as Exhibit A.

[3] In the Order, the Court dismissed each of these claims on the basis that they are derivative of Plaintiffs' FLSA claims, which were not adequately alleged.  Order at 7-8.  For that reason, the Court did not reach the substantive defects of Counts 2-5 in its Order.

providing care in accordance with the Ethical and Religious Directives for Catholic Health Services promulgated by the United States Conference of Catholic Bishops in all aspects of its patient care.

Plaintiffs filed their original Complaint in this action on September 3, 2009, asserting five causes of action on behalf of themselves and others similarly situated, each of which derived from Defendants' alleged failure to pay Plaintiffs and putative class members for all hours worked.  On January 15, 2010, Defendants moved to dismiss Plaintiffs' Complaint on various grounds, including Plaintiffs' failure to adequately plead their claims pursuant to Rules of Civil Procedure 8 and 9(b).  Following voluminous briefing and oral argument, the Court dismissed Plaintiffs' Complaint in its entirety because, even under the most lenient interpretations of the pleading standards, it found that Plaintiffs had failed to adequately allege minimum wage or overtime claims, and all of the other counts of their Complaint derived from those claims.  *See* Order at 8.  The Court, however, granted Plaintiffs' request for leave to re-plead.  *Id.*; *see also* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss ("Opposition") at 4 (docket no. 25).   Plaintiffs filed their Amended Complaint on October 18, 2010.

As in their original Complaint, Plaintiffs contend in the Amended Complaint that they were wrongfully deprived of remuneration in three ways.  First, they claim that Caritas automatically deducted time from their total hours worked for meal breaks even when they performed work during a meal period.  Amended Complaint ("Am. Compl."), ¶¶ 80-99.  Second, they claim that unnamed "policies, practices and/or [aspects of Caritas's] time recording system" prevented them from recording preliminary and postliminary work performed at the start and conclusion of each shift.  Am. Compl., ¶¶ 100-103.  Third, they claim that Caritas failed to pay them for time spent attending unspecified "compensable training programs."  Am. Compl., ¶¶ 104-108.  Plaintiffs claim that this alleged failure to pay wages constitutes a violation of the FLSA, and led to a failure to keep accurate records as well as incorrect crediting of benefits in supposed violation of the Employment Retirement Income Security Act ("ERISA").  Am. Compl., ¶¶ 157-161.  They further assert that Caritas engaged in the alleged non-payment of wages "willfully and systematically" as part of a "scheme to cheat Plaintiffs and Class

Members out of their property and to convert Plaintiff's [sic] and Class Members' property, including their wages and/or overtime pay" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Am. Compl., ¶¶ 125-43, 163-64.  Plaintiffs also maintain that because they claim that Defendants intentionally misled Plaintiffs into believing that they were being properly paid, they are estopped from asserting a statute of limitations defense.  Am. Compl., ¶¶ 137-45, 158.  As noted above, all of these allegations are repeated – nearly verbatim – from Plaintiffs' original, inadequate Complaint.

Plaintiffs' Amended Complaint is practically identical to the Complaint the Court previously dismissed as inadequate.  First, Plaintiffs offer exceedingly minor adjustments to their allegations against the two individual Defendants, apparently designed to narrow their original claims and exclude the individuals as Defendants to the ERISA claims.  See Redline, ¶¶ 22-74 (replacing references to individuals' supposed oversight of employees' "benefits" with references to "compensation" or "terms of employment").  Second, Plaintiffs add two paragraphs that appear to assert that they and the 12,000 putative class members they seek to represent "regularly worked" hours over 40 in a week and were not compensated for such time and that they "regularly worked hours both under and in excess of forty per week and were not paid properly for all of those hours . . . ."  Am. Compl., ¶¶ 76, 110.  Third, Plaintiffs make clear that their ERISA claims seek benefits, in the form of compensation credits.  *See* Am. Compl., ¶ 124.  Fourth, Plaintiffs make minor adjustments to their allegations relating to their RICO claims to specify that they now allege wire fraud, in addition to the mail fraud allegations in their original Complaint.  *See* Redline, ¶¶ 126-141.  Finally, Plaintiffs add two paragraphs to their RICO allegations asserting that Plaintiffs and the 12,000 people they seek to represent were unaware of the matters as to which Defendants supposedly deceived them until receiving each of their paychecks over a four-year period.  Am. Compl., ¶¶ 142, 144. Aside from these superficial revisions, the Amended Complaint is identical to the original Complaint that Plaintiffs filed in this matter in September 2009.

<u>**ARGUMENT**</u>

**I.      PLAINTIFFS' AMENDED COMPLAINT FAILS TO SATISFY THE APPLICABLE PLEADING STANDARDS**

The claims Plaintiffs assert in their Amended Complaint are subject to the pleading standard established in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).  In addition, the most scandalous claim in Plaintiffs' Complaint, that Defendants engaged in a pattern of racketeering activity in violation of RICO, is subject to the heightened requirements of Rule 9(b) and must be pled with particularity.  Even after having been granted an opportunity to re-plead their claims, Plaintiffs' Amended Complaint is nothing but another copy pressed from the mold of Plaintiffs' counsels' hospitalovertime.com campaign that remains entirely devoid of substance.  Plaintiffs' allegations still consist of nothing but conclusory assertions that parrot the legal elements of one or more of the five counts of the Complaint and fail to give rise to a plausible claim for relief.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  As this Court has recognized, the Supreme Court in *Twombly* and *Iqbal* made clear that in order to comply with this rule, "a complaint must contain enough facts to show that it is 'plausible,' rather than merely speculative, that the pleader is entitled to relief."  Order at 3 (quoting *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555).  While "detailed factual allegations" are not necessary for a complaint to survive a motion to dismiss, a complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S.Ct. at 1949.  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and thus legal conclusions couched as factual allegations are not to be given any credence.  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S.Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (quotations omitted).

The Court has already determined that the conclusory allegations in Plaintiffs' original Complaint failed to satisfy these requirements, and the few additional hollow words that Plaintiffs have added to their Amended Complaint do not allow for a different outcome.  If Plaintiffs had been subject to any identifiable legal wrong, much less the nefarious conspiracy they attribute to Defendants, they might have shared with Defendants and the Court a few specifics about their own experiences as employees of Caritas that they claim entitles them to the relief they seek.  More than a year has passed since Plaintiffs filed their original Complaint in this matter, and they have been on notice of the defects in their original pleading since Defendants filed their motion to dismiss the original Complaint (docket no. 18) more than ten months ago.  In that time, Plaintiffs' counsel plainly has done nothing to investigate the claims they seek to prosecute against Caritas.  Plaintiffs' Amended Complaint still consists of only inflammatory and broadside references to alleged violations of the law, invokes a statute with no application to Caritas or its benefit plans, and remains nearly devoid of substantive factual allegations that would ground a plausible claim for relief.  By continuing to rely on the same generic complaint that Plaintiffs' counsel has filed against every major hospital system in Massachusetts,[4] Plaintiffs and their counsel have demonstrated that they are unable or unwilling to plead any factual allegations specific to Caritas or Plaintiffs or putative class members at issue in their litigation.  Despite consisting of twenty-seven pages and more than 160 numbered paragraphs, the Amended Complaint still manages to say virtually nothing, proving that "[a] complaint can be long-winded, even prolix, without pleading with particularity.  Indeed, such a garrulous style is not an uncommon mask for an absence of detail."  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  The Court should not allow

---

[4] *See Manning v. Boston Med. Ctr. Corp.*,  No. 09-CV-11463-NMG (D. Mass. filed Sept. 3, 2009); *Hamilton v. Partners Healthcare Sys.*, No. 09-CV-11461-DPW (D. Mass. filed Sept. 3, 2009); *Cavallaro v. UMass Mem'l Healthcare Inc.*, No. 09-CV-40152-FDS (D. Mass. filed Sept. 3, 2009); and *Woolfson v. Caregroup, Inc.*, No. 09-CV-11464-JLT (D. Mass. filed Sept. 3, 2009).  In each of these cases, Plaintiffs' counsel filed a class action complaint against various institutions in a healthcare system, the chief executive officer of the system, and a senior human resources officer of the system, each containing a nearly verbatim recitation of the same 150-plus numbered paragraphs against each group of defendants and each asserting the same five counts that they assert against Caritas in this matter.

Plaintiffs to proceed with their claims against Caritas based on nothing more than a blunt attack on the hospital industry at large.

A.      **Plaintiffs' Factual Allegations Are Insufficient to Make Their Claims Plausible**

1.      **Plaintiffs Fail to Provide Sufficient Factual Support for Their FLSA Claims**

Plaintiffs' attempt to re-plead their wage claims is entirely inadequate.  The only new assertion in the Amended Complaint with respect to Plaintiffs' wage claims is the extraordinarily general allegation that they "regularly worked hours over 40 in a week and were not compensated for such time." Am. Comp., ¶ 76.  Indeed, when Plaintiffs repeat this vague recitation a few pages later, they appear to retreat from this assertion with an allegation that they regularly worked both more and less than forty hours per week.  *See* Am. Comp., ¶ 110 (alleging that "Plaintiffs and Class Members regularly worked hours <u>both under and in excess</u> of forty hours per week") (emphasis added).  This is facially insufficient under a growing body of case law holding that an employee must allege, at a minimum, an estimate of the number of hours worked without adequate compensation.[5]  *See Villegas v. J.P. Morgan Chase & Co.*, 2009 WL 605833, at *4-5 (N.D. Cal. 2009) (complaint insufficient where it stated that plaintiff "worked more than 40 hours in a work-week" because that allegation is "not much more informative than an allegation that she was not paid for overtime work in general"); *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 546 (S.D.N.Y. 2009) (plaintiffs stated claim for overtime by alleging time period in which they worked and approximate hours worked each week); *Connolly v. Smugglers' Notch Mgmt. Co.*, 2009 WL

---

[5] In its September 27, 2010 Order, the Court noted two different approaches to application of the *Twombly* pleading standard to FLSA claims.  Under what the Court referred to as the "more stringent" standard, a plaintiff "cannot merely allege that he worked in excess of forty hours, but must also approximate the number of hours worked without proper compensation and his hourly rate of pay."  Order at 5.  As noted in the text above, the prevailing trend in the case law supports this as the correct view.  The alternative view, characterized by this Court as the "less stringent" approach and typified by *Landry v. Peter Pan Bus Lines*, No. 10-cv-11230 at 3 (D. Mass. Nov. 20, 2009) (attached as Exhibit B), requires a plaintiff asserting an FLSA claim to plead little more than that "he worked in excess of 40 hours per week but was not paid overtime."  *Id.*  This "less stringent" approach is inconsistent with the *Twombly* standard, as is permits claims to survive based on pleadings that essentially amount to legal conclusions and are "not much more informative than an allegation that [the plaintiff] was not paid for overtime work in general."  *See Villegas*, 2009 WL 605833, at *4-5; *see also Twombly*, 550 U.S. 555 (a plaintiff with "a largely groundless claim " should not "be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value") (quotations omitted).  Moreover, the reality is that even cases ostensibly espousing the "less stringent" standard have dealt with pleadings containing far more detailed factual information than the Plaintiffs' Amended Complaint here.  *See* Complaint, *Landry v. Peter Pan Bus Lines*, No. 10-11230 (docket no. 1) at ¶¶ 9, 12 (stating plaintiff's specific rate of compensation and dates of employment) (attached as Exhibit C).

3734123, at *3 (D. Vt. 2009) (plaintiff adequately alleged overtime claim by stating that she worked

2100-2300 hours per year); *Haskins v. VIP Wireless Consulting*, 2009 WL 4639070, at *1 (W.D. Pa.

2009) (plaintiff adequately alleged overtime by pleading "that the standard minimum work week at VIP

Wireless was 43 hours and that he normally worked approximately 62 hours each week"); *Jones v.

Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102 (S.D. Iowa 2008) (allegation that "[p]laintiffs and

other assistant managers regularly worked regular time and overtime each week but were not paid

regular and overtime wages" insufficient to state FLSA claim); *Zhong v. August August Corp.*, 498 F.

Supp. 2d 625, 630 (S.D.N.Y. 2007) (dismissing overtime claim where plaintiff "merely alleged that he

worked 'beyond 40 hours per week'").  Having persisted in their failure to provide any estimate of the

hours they claim to have worked, Plaintiffs clearly fail to meet this standard.

Under *Twombly* and *Iqbal*, the touchstone for adequate pleading is "plausibility."  *Iqbal*, 129

S.Ct. at 1949; *Twombly*, 550 U.S. at 555.  Thus, even if <u>particular</u> facts such as the precise number of

hours that an employee works or her rate of pay are not required for adequate pleading, she must plead

sufficient facts <u>as a whole</u> to make an entitlement to overtime pay under the FLSA plausible.  For that

reason, even in cases where Courts have not required specific information about the number of hours

plaintiffs claim to have worked, plaintiffs have consistently been required to plead more factual

information than Plaintiffs have done here.  For example, in *Hoffman v. Cemex, Inc.*, the Court denied a

motion to dismiss the plaintiffs' overtime claims where the complaint was "not replete with detailed

factual allegations," but in that case the plaintiffs had at least pleaded their own job positions and dates

of employment in addition to the fact that they had "regularly worked more than 40 hours per

workweek, and that they were not paid time-and-a half for those overtime hours." 2009 WL 4825224, at

*3 (S.D. Tex. 2009); *see also Stark v. Audio Mktg. Solutions, Inc.*, 2010 WL 3789572, at *4 (D. Neb.

2010) (plaintiff could survive motion to dismiss based on allegations regarding position held and general

statements about hours worked); *Xavier v. Belfor USA Group, Inc.*, 2009 WL 411559, at *1 (E.D. La.

2009) (denying motion to dismiss where complaint included list of project sites where plaintiffs worked in addition to allegations that unskilled laborers regularly worked "in excess of 40 hours per week").

In the Amended Complaint, Plaintiffs still plead <u>no</u> facts about their own employment, other than the "fact" that they sometimes worked more than forty hours per week. They fail to allege what positions they held, in which of the defendant hospitals they worked,[6] or during what period of time they were employed.[7] In addition, Plaintiffs make the conclusory assertion that they were not compensated for preliminary and postliminary work, but they fail to provide any description of the uncompensated "work" they claim to have performed. Am. Compl., ¶¶ 100-102. They similarly allege in conclusory fashion that they attended "compensable training programs," without specifying the nature of the training programs attended, when and where they occurred, the voluntariness or job-relatedness of these training programs, or any other allegation creating a plausible inference that these activities may be compensable.[8] Am. Compl., ¶¶ 104-06. Each of these allegations must be disregarded as legal conclusions "couched as [] factual allegation[s]." *Twombly*, 550 U.S. at 555. Once these conclusions are set aside, Plaintiffs' remaining assertions present no allegations of fact whatsoever to render plausible their claims for allegedly unpaid training time and preliminary and postliminary work.[9]

---

[6] In the Order, the Court held that Plaintiffs had adequately alleged "an employer-employee relationship existed between the parties." Order at 3. However, in cases like this one in which multiple entities are named as defendants, more information is required in order to show that a plaintiff is in fact an employee covered by the FLSA. *See Diaz v. Consortium for Worker Educ.*, 2010 WL 3910280, at *4 (S.D.N.Y. 2010) (conclusory allegation that they were "'employees' of the defendants" failed to adequately allege employee-employer relationship where two companies were alleged to be joint employers); *see also Stark*, 2010 WL 3789572, at *4 (stating that in FLSA cases, "the plaintiff has the burden of proving that he or she is an employee and covered under the act" and dismissing claim for failure to adequately allege FLSA coverage). Here, Plaintiffs have sued multiple hospitals, attached a common label to them, and alleged that they worked for the labeled amalgam. They do not allege that they worked for any specific entity within the labeled amalgam, much less that each of the entities that they have lumped together was their employer.

[7] This is of particular concern with respect to several purported "consent to join" forms that have been filed in this case that are signed by individuals as to whom Caritas's employment files reveal no record, and who thus appear never to have worked for Defendants.

[8] Not all "training" is compensable work. Whether employees must be paid for training activities depends on the facts and circumstances of the particular training. *See* 29 C.F.R. §§ 785.27-785.32 (describing types of training that are compensable and types that are not).

[9] As another glaring example of Plaintiffs' failure to meet the *Twombly* pleading standard, Plaintiffs attribute a number of statements and actions to "defendants' managers," again in conclusory fashion without providing any information as to the identity of those individuals, whether they actually constitute management, or when and to whom such statements were allegedly made. *See, e.g.*, Am. Compl., ¶ 91 ("Defendants' management have [sic] repeatedly observed Plaintiffs and Class

**2.** **Even If Plaintiffs' Individual FLSA Claims Could Survive, Their Class Claims Fail**

Plaintiffs have made clear that their intent is to put forward a complaint that is as vague as possible in order to sweep as many disparate putative class members within its scope as possible. It is for this reason that they use the artifice of capitalization and quotation marks to define into existence three fictional "policies" as the foundation of all their claims in this matter, rather than pleading factual information that would give rise to a plausible inference that they are owed some unpaid compensation. However, where, as here, plaintiffs assert their claims on behalf of a massive and heterogeneous putative class, courts require <u>more</u> factual information in order to permit a complaint to proceed than would be necessary in a single-plaintiff action.[10] *See Landry*, No. 10-cv-11230 at 3 (D. Mass. Nov. 20, 2009) (permitting individual claim to survive based on minimal factual pleading relating to named plaintiff, but dismissing class claims as insufficiently plead); *In re Bank of Am. Wage & Hour Employment Litig.*, 2010 WL 4180567, at *5 (D. Kan. 2010) (noting more forgiving standard that applies in single-plaintiff cases, and allowing class action to proceed where the "increase in complexity is certainly matched by the increase in the level of detail in the consolidated complaint"); *cf. Stark*, 2010 WL 3789572, at *4 (in single-plaintiff FLSA case, distinguishing cases requiring detailed factual allegations as "collective or class actions" involving "generalized allegations that purportedly applied to an entire class of plaintiffs") (quotations omitted).

In refining the Rule 8 pleading standard, the Supreme Court explained that its purpose in doing so was to prevent claims of marginal merit from squandering the resources of defendants and the courts. *Twombly*, 550 U.S. at 558 (pleading standard intended to prevent "a plaintiff with a largely groundless

---

Members working through their unpaid meal breaks."); Am. Compl., ¶ 92 ("Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meal periods. . . ."). In addition to their vagueness, these allegations are recycled verbatim from Plaintiffs' original Complaint.

[10] Plaintiffs ironically have attempted to flip this dynamic on its head by arguing that the Court should forgive their substanceless pleading because they seek to represent a remarkably broad and diverse class, making it impossible to plead their claims with any specificity. *See* Opposition at 7. This is exactly the opposite of what the Supreme Court intended in refining the pleading standard in *Twombly*.

claim [from] be[ing] allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value") (citations and quotations omitted). Certainly, a putative class action such as this one, which is purportedly asserted on behalf of 12,000 employees in forty-three disparate job classifications, threatens Caritas and the Court with having to expend substantial resources in orders of magnitude beyond what would be expended with respect to any individual employee's claim.  For that reason, the Court should dismiss Plaintiffs' class and collective action allegations in this matter, even if the Court were to find that Plaintiffs' anemic addition to their prior pleading had somehow eked Plaintiffs' individual claims over the *Twombly* threshold.

**3.      Plaintiffs' RICO Claim Fails to Meet the Heightened Pleading Standard  of Rule 9(b)**

Even putting aside the facial absurdity of pursuing a racketeering claim against an organization that Plaintiffs themselves describe as "engaged in . . . the care of the sick,"[11]  Plaintiffs fall dramatically short of adequately pleading claims under RICO.  Where, as here, a plaintiff alleges fraud as the predicate "racketeering activity" of a RICO claim,[12] the claim is subject to Rule 9(b).  *Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 244 (1st Cir. 2006); *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997); *Feinstein v. Resolution Trust Co.*, 942 F.2d 34, 42 (1st Cir. 1991); *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987).  "It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave identification of predicate acts for the time of trial."  *Cordero-Hernandez*, 449 F.3d at 244 (quotations omitted).  Rather, the plaintiff must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "As in any other fraud case, the pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud."  *Feinstein*, 942 F.2d at 42.  The failure to plead a RICO claim with sufficient specificity requires dismissal.  *Cordero-Hernandez*, 449 F.3d at

---

[11] Am. Compl., ¶ 18.

[12] *See, e.g.*, Am. Compl., ¶ 164 ("Defendants conducted . . . the enterprise's affairs through a pattern of racketeering by devising a Scheme to obtain Plaintiffs' and Class Members' property by means of false or fraudulent representations, at least some of which were made in the misleading payroll checks which defendants mailed.").

244; *Feinstein*, 942 F.2d at 44.  Furthermore, where there are allegations that multiple defendants

committed the underlying supposed fraud, the plaintiff must particularize the allegations against each

individual defendant.  *See Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 79 (D. Mass. 1998)

(Wolf, J.).

 Plaintiffs come nowhere close to satisfying their Rule 9(b) pleading obligations.  In support of

the mail fraud allegations that underlie their RICO claim, Plaintiffs merely assert that:

> 128. Defendants' Scheme involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive Plaintiff [sic] and Class Members.  The Scheme involved depriving Plaintiffs and Class Members of their lawful entitlement to wages and overtime.

> 129. In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly wired payroll information and/or mailed payroll checks, either directly to Plaintiff [sic] and Class Members or between defendants' business locations.  These transactions occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.

> 130. The payroll checks were false and deceptive because they misled Plaintiffs and Class Members about the amount of wages to which they were entitled, as well as their status and rights under the FLSA .

Am. Compl., ¶¶ 128-30.  Plaintiffs fail to indentify any elements of a particularized pleading of fraud.

Their pleadings fail to describe the specific representations alleged to be false – it is unclear, for

example whether the alleged misrepresentations were made in pay*checks*, pay*stubs*, or other "payroll

information," as the Amended Complaint uses all three terms interchangeably.  *See* Am. Compl., ¶ 113

(referring to "paystubs and payroll information"); Am. Compl., ¶ 129 (referring to "payroll information

and/or . . . payroll checks"); Am. Compl., ¶ 164 (referring to "misleading payroll checks").   The

Amended Complaint also fails to specify the time or place of any of the allegedly false mailings or wire

transmissions, and it omits the identity of the particular defendant or defendants supposed responsible

for the alleged misrepresentation.  "Where multiple defendants are asked to respond to allegations of

fraud, the complaint should inform each defendant of the nature of his alleged participation in the

fraud."  *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987).  This

failure recently proved fatal to RICO claims in another case litigated by Plaintiffs' counsel involving

virtually identical allegations.  *See Barrus v. Dick's Sporting Goods, Inc.*, __ F. Supp. 2d __, 2010 WL

3075730, at *15 (W.D.N.Y 2010) (dismissing RICO allegations because complaint failed to "provide

facts suggesting that any of the individual defendants were aware of, or participated in, any allegedly

fraudulent activity").  Likewise, in this case, Plaintiffs' failure to plead their RICO claims with

particularity requires dismissal.[13]

Plaintiffs also fail to plead adequately the intent requirement of the alleged fraud.  *See U.S. v.

Sawyer*, 85 F.3d 713, 732 (1st Cir. 1996) (to establish mail fraud, "a demonstrated intent to deceive is

required").  Plaintiffs offer numerous hollow legal conclusions with regard to Defendants' supposed

mental state, but they provide no factual allegation remotely sufficient to ground an inference that these

scandalous charges are plausible.  For example, Plaintiffs allege that Defendants "deliberately

misrepresented" the legality of their pay practices, that they "intended to devise . . . a scheme to cheat

Plaintiffs and Class Members out of their property," and that they "acted with malice, intent, knowledge,

and in reckless disregard of Plaintiffs' and Class Members' rights."  Am. Compl., ¶¶ 114, 127, 135.

However, they identify no actor and no actions that played any part in this alleged malicious conspiracy

to steal from thousands of employees, and they do not plead any other facts that would lend plausibility

to the intent element of their RICO claims.[14]

---

[13] Although the First Circuit has stated that in some circumstances, discovery may be granted prior to dismissal of RICO claims that fail to meet the requirements of Rule 9(b), such a course is inappropriate here.  Allowing a plaintiff to cure insufficient pleadings under that "second chance" rule is permissible only where the RICO defendant is likely to be the sole party in possession of information about the fraud.  *See, e.g.*, *Cordero-Hernandez*, 449 F.3d at 245 (dismissing RICO claims for failure to satisfy requirements of Rule 9(b) where "[t]here was no showing . . . that the defendants were in exclusive control of any crucial information, and [plaintiff] had not demonstrated a high likelihood that useful information would result from further discovery").  Here, Plaintiffs claim that the fraudulent statements at issue were contained in their own paychecks or paystubs. Am. Compl., ¶¶ 131.  Because they indisputably have had access to those documents, this is simply a case where Plaintiffs have "not been diligent in attempting to collect information that would allow them to fully allege a RICO claim."  *Cordero-Hernandez*, 449 F.3d at 244.  Moreover, Plaintiffs have had more than a year since filing their initial Complaint in the matter to investigate and substantiate their allegations, and they have obviously been unable or unwilling to do so.  Allowing discovery as to Plaintiffs' RICO claim under these circumstances is unnecessary and would be inappropriate.

[14] In this manner, Plaintiffs' RICO allegations are insufficient even under the less demanding Rule 8 pleading standard.  *See Iqbal*, 129 S.Ct. at 1952 (where claim requires particular state of mind, pleadings are insufficient where they fail to "contain any factual allegation sufficient to plausibly suggest [the alleged] state of mind").

### B.   Plaintiffs' Claims Against the Individual Defendants Fail to Satisfy the *Iqbal* Pleading Standard

Finally, Plaintiffs' claims against the two individual defendants, Ralph de la Torre, Caritas's President and CEO; and Richard Kropp, Caritas' Senior Vice President for Human Resources, also are insufficient to survive a motion to dismiss. The Amended Complaint surmises that these individuals are liable to Plaintiffs and the class they purport to represent because these individuals – apparently by virtue of assumptions Plaintiffs make from their job titles – have "the authority to . . . make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll and the terms of employment provided to employees," as well as authority to "make decisions that concern the policies defendants adopt and the implementation of those policies." Am. Compl., ¶¶ 28-29, 33-43. Plaintiffs disingenuously reason that because these individuals have "authority" to conduct these activities, they must have been "actively involved" in the decisions at issue in this case. Am. Compl., ¶¶ 44-49, 67-73. These layered, conclusory allegations are not entitled to a presumption of truth, and the claims against the individual defendants cannot survive. *See Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.

In *Iqbal*, the Supreme Court dismissed claims against the government officials individually named in a complaint because the pleadings contained insufficient facts to tie them to the alleged wrongdoing attributed to the entities they oversaw. *See* 129 S.Ct. at 1952. Here, Plaintiffs similarly identify no facts that could tie the individual defendants to any alleged wrongdoing by Caritas; instead, they merely rely on their titles at Caritas to infer culpability.[15] Plaintiffs' counsel has unsuccessfully plied this tactic of making prolix but substanceless allegations against a corporate defendant's senior officers before.[16]  *See Tracy v. NVR, Inc.*, 2009 WL 3153150, at *5-6 (W.D.N.Y. 2009) (citing *Iqbal* and

---

[15] Apropos of this lack of specificity, Plaintiffs' counsel has crafted nearly <u>identical</u> allegations against individual defendants working for four other hospital systems in this District and numerous hospital systems elsewhere. *See* complaints, *supra*, at note 4.

[16] Indeed, Plaintiffs' factual allegations regarding the individual defendants in this action bear a striking resemblance to the factual allegations rejected as conclusory in the *Tracy* case, which concerns individuals working in an entirely different industry. *See Tracy*, 2009 WL 3153150, at *5-6.

denying motion to amend complaint to add individual defendants as futile because "upon careful analysis, the complaint asserts little more than because [one] was Chairman and [another] was President of [the corporate defendant], then each must have had authority to take the actions that comprise the [test for employer status under the FLSA], and that because each had the authority to take those actions, then each must have in fact taken those actions"), *aff'd* 2009 WL 3647862 (W.D.N.Y. 2009).[17]  There is no reason for the result to be different here, and the Court should dismiss Dr. de la Torre and Mr. Kropp from this action.

## II.   THE COURT SHOULD DISMISS PLAINTIFFS' ERISA CLAIMS

### A.   Caritas's Benefit Plans Are Church Plans Exempt from ERISA Coverage

Despite the fact that Caritas has consistently stated throughout this litigation that it maintains no benefit plans regulated by ERISA, the Amended Complaint asserts virtually the same claims under that statute as were asserted in Plaintiffs' original Complaint.[18]  *See* Am. Compl., ¶¶ 157-161.  Caritas was established as an affiliate of the Roman Catholic Church and maintains church plans that are exempt from ERISA coverage in the absence of an express election pursuant to 26 U.S.C. § 401(d).[19]  *See* 29 U.S.C. § 1003(b)(2) ("The provisions of [ERISA] shall not apply to any employee benefit plan if . . . such plan is a church plan . . . with respect to which no election has been made under section 410(d) of Title 26."); *see also* Caritas Christi Retirement Savings Plan at 1 ("This Plan is a "church plan" within

---

[17] In *Tracy*, the District Court also rejected the plaintiffs' attempt to pursue claims against a senior human resources officer as an individual defendant.  The court held that the plaintiffs' "boilerplate allegations that [the officer met] the various prongs of the [FLSA's] economic reality test stated solely upon information and belief and without any supporting details" were "insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA."  2009 WL 3647862, at *5-6.

[18] Defendants' counsel informed Plaintiffs that the plan is an ERISA-exempt church plan over a year ago, and Defendants moved for dismissal of the ERISA claims in Plaintiffs' original Complaint on that basis.  *See* Letter dated October 27, 2009 (attached as Exhibit 2 to Miller Aff.); Memorandum in Support of Motion to Dismiss at 14-16 (docket no. 20).

[19] Caritas and its hospitals are in the process of being sold to Steward Health Care System LLC.  *See Caritas Christi v. Coakley*, SJ-2010-0453 (Mass. Oct. 29, 2010) (approving proposed transaction) (attached hereto as Exhibit D).  Following this transaction, certain benefit plans maintained by Caritas may, at some later date, become subject to ERISA.  *See id.* at 2.  However, Plaintiffs' allegations contain only allegations about benefits that supposedly accrued prior to this transaction.  Plaintiffs make no allegations that plausibly suggest that Caritas maintained any benefit plans governed by ERISA during that period.

the meaning of Section 3(33) of the Employee Retirement Income Security Act of 1974, as amended, and as such is exempt from the provisions of such Act.") (attached as Exhibit 3 to Miller Aff.).[20]

There is no question that the benefit plans upon which Plaintiffs base their ERISA claims are church plans. A plan qualifies as a church plan – and is exempt from ERISA – if it is established and maintained for the employees of a "church." 29 U.S.C. § 1002(33)(A). ERISA provides that a person is an employee of a "church" if he or she is "an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of title 26 and which is controlled by or associated with a church. . . ." 29 U.S.C. § 1002(33)(C)(ii).[21]  In turn, an organization is "associated with a church" if it shares "common religious bonds and convictions with that church. . . ." 29 U.S.C. § 1002(33)(C)(iv). Caritas Christi's stated purpose is:

> [t]o fulfill the health care mission of the Roman Catholic Church in accordance with the teachings of the Church as enunciated by the Holy Father and the Bishops in communion with him.

Caritas Christi Articles of Organization (attached as Exhibit 5 to Miller Aff.).[22]  Moreover, the organization's incorporators included then-Archbishop of Boston Bernard F. Law; and then-Auxiliary Bishop of Boston Daniel A. Hart. *Id.* Clearly, Caritas is "associated with" the Roman Catholic Church and, therefore, the Caritas Christi Retirement Plan is exempt from ERISA regulation. *See* 29 U.S.C. § 1002(33)(C)(iv); *Rinehart v. Life Ins. Co. of N. Am.*, 2009 WL 995715, at *4-5 (W.D. Wash. 2009)

---

[20] Because Plaintiffs refer to Caritas's retirement plan in their Complaint, the Court may consider that document in addressing the motion to dismiss. *See Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (court may consider documents incorporated by reference in complaint); *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 20 (1st Cir. 2003) (same).

[21] At the time that the original and Amended Complaints were filed, the Internal Revenue Service recognized Caritas as a tax-exempt organization pursuant to Section 501(c)(3) of the Internal Revenue Code by virtue of its inclusion in *The Official Catholic Directory*. *See* IRS Group Exemption No. 0928 (attached as Exhibit 4 to Miller Aff.). Because it is a matter of public record, the Court may take judicial notice of this group exemption. *See Colonial Mortgage*, 324 F.3d at 16 (courts may "go outside the margins of the complaint proper" and look to "matters of public record, and other matters of which the court may take judicial notice" in addressing motion to dismiss).

[22] In ruling on this motion to dismiss, the Court may take judicial notice of Caritas's Articles of Organization, as it is a publicly filed document available through the Secretary of State's Corporations Division. *See, e.g., Colonial Mortgage*, 324 F.3d at 16; *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763 (D. Ariz. 2009) (taking judicial notice of publicly filed articles of incorporation in addressing motion to dismiss); *Banks v. Allegheny*, 2007 WL 2905726, at *2 (W.D. Pa. 2007) (in addressing motion to dismiss, "the court may take judicial notice of the [parties' publicly filed] Articles of Incorporation").

(holding that benefit plan sponsored by Catholic health system qualified as church plan); *Catholic Charities of Maine, Inc. v. City of Portland*, 304 F. Supp. 2d 77, 85 (D. Me. 2004) (social services organization "associated with" church where organization maintained financial ties to Roman Catholic Diocese of Maine and provided services "based on Roman Catholic religious teaching that calls on Catholics to serve those in need").  Accordingly, this Court should dismiss Plaintiffs' ERISA claims and dismiss the Caritas Christi Retirement Plan from this action.

      **B.**      **Plaintiffs' Claim for Breach of Fiduciary Duty Fails.**

Even if the plans that are the subject of Plaintiffs' Amended Complaint were covered by ERISA, Plaintiffs' allegations still would fail to give rise to claims that are cognizable under ERISA.  Simply put, ERISA is not concerned with wages.  *See Massachusetts v. Morash*, 490 U.S. 107, 115 (1989) ("[T]he danger of defeated expectations of wages for services performed [is] a danger Congress chose not to regulate in ERISA.").[23]  Plaintiffs identify no independent violations of ERISA.  Rather, they allege violations of overtime pay requirements under the FLSA and claim that these violations, if established, will affect the calculation of benefits under the plan.[24]  Even if Plaintiffs were able to state a viable FLSA claim, their derivative breach of fiduciary duty claim would fail because Plaintiffs fail to plead the elements of such a claim; because pay practices are business decisions that do not implicate any fiduciary duties; and because the calculation of benefits credits is a ministerial, rather than fiduciary, function.

      **1.**      <u>**Plaintiffs Fail to Plead the Elements of a Breach of Fiduciary Duty Claim**</u>

Plaintiffs' claim for breach of fiduciary duty (Count 3) fails as a matter of law because they have failed to plead even the basic elements of such a claim.  In order to plead a breach of fiduciary claim,

---

[23] Under ERISA, a beneficiary may sue under § 502(a)(1) to recover benefits due under terms of a plan, or to enforce or clarify his or her right to benefits.  *See* 29 U.S.C. § 1132(a).  Alternatively, a participant, beneficiary, or fiduciary may sue under § 502(a)(3) to enjoin violations of the statute or to obtain other "appropriate equitable relief."  *Id.*; *see also LaRocca v. Borden, Inc.*, 276 F.3d 22, 27 (1st Cir. 2001).

[24] Plaintiffs' motives in attempting to bootstrap these ERISA claims onto their FLSA claims are transparent – they seek to avoid the Congressional mandate that overtime claims under federal law are to be pursued only on an opt-in basis and not as opt-out Rule 23 class actions.  *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Plaintiffs must allege (1) that Defendants were acting as an ERISA fiduciary at the time of the conduct that is the subject of the complaint, and (2) that that conduct amounted to a breach of fiduciary duty under ERISA. *Watson v. Deaconess Waltham Hosp*., 141 F. Supp. 2d 145, 152-54 (D. Mass. 2001). Plaintiffs here fail to identify any persons performing fiduciary duties who are subject to suit under ERISA. Plaintiffs allege that Dr. de la Torre is the President and Chief Executive Officer of Caritas and that Mr. Kropp is the Senior Vice President of Human Resources, but they do not allege that either of them had any control over benefits.[25] Am. Compl., ¶¶ 26, 51. The remaining Defendants are alleged to be Plaintiffs' employers. Plaintiffs do not allege that any of these Defendants are plan fiduciaries. Plaintiffs also name the Caritas Christi Retirement Plan as a defendant, but a plan cannot be its own fiduciary. *See* 29 U.S.C. § 1002(21)(A) (defining fiduciary as a person who manages or has discretionary authority for administration of plan). In addition, Plaintiffs have failed to identify any conduct that is inconsistent with Caritas's ERISA plans to ground their claim. Thus, on a very basic level, Plaintiffs fail to state a claim for breach of fiduciary duty under ERISA.

**2.    Pay Practices Decisions Cannot Give Rise to a Breach of Fiduciary Duty**

In addition to failing to adequately plead the elements of their ERISA claim, Plaintiffs also wrongly assume that ERISA governs decisions regarding pay practices. ERISA fiduciary duties, however, apply only to certain actions with respect to employee benefit plans, and as explained below, those actions do not include business decisions made by an employer in its role as plan sponsor. Fiduciary duties attach to the choices made by someone charged with handling another person's assets, not the business choices that determine whether or not that fiduciary is charged with handling the assets in the first place. *See Pegram v. Herdrich*, 530 U.S. 211, 231 (2000) ("[F]iduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries. Trustees buy, sell, and lease investment property, lend and borrow, and do other things to conserve and

---

[25] In fact, Plaintiffs have specifically narrowed their allegations against the two individual Defendants to omit their prior allegations that those individuals had and exercised control over benefits matters. *See* Redline, ¶¶ 22-74.

nurture assets.") (citations omitted).  Plaintiffs do not appear to have any quarrel with the manner in which the plan administrators exercised their duties as fiduciaries for any plan in which Plaintiffs participated.  Indeed, the plan administrators did what the plan required.  Instead, Plaintiffs complain about the factual premises from which the plan administrators operated in implementing the plan, and that simply is not actionable under ERISA.

When addressing a breach of fiduciary duty claim, the first inquiry a court should make is "whether a person is a fiduciary with respect to the particular activity in question."  *Moench v. Robertson*, 62 F.3d 553, 561 (3d Cir. 1995).  Under ERISA, an employer is only subject to fiduciary standards "to the extent that he or she exercises any discretionary authority or discretionary control respecting management of the plan, or has any discretionary authority or discretionary responsibility in the administration of the plan."[26]  *Varity Corp. v. Howe,* 516 U.S. 489, 498 (1996); *see also Livick v. Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008); *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998).  It is well established that an ERISA fiduciary "is not subject to those fiduciary duties in all of his life activities."  *Hall v. Hill Refrigeration, Inc.*, 36 F. Supp. 2d 1185, 1188 (C.D. Cal. 1999).  Rather, "ERISA permits employers to wear two hats, and they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that

---

[26] The statute states, in relevant part:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  ERISA further defines the term "administrator" to mean:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
> (ii) if an administrator is not so designated, the plan sponsor; or
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

is not regulated by ERISA."  *Fletcher v. Kroger Co.*, 942 F.2d 1137, 1139 (7th Cir. 1991) (internal

quotations omitted).[27]

Necessarily, ERISA draws a line between business judgments and fiduciary decisions, and

applies only to the latter.  Indeed, courts have repeatedly recognized that ERISA's fiduciary duties do

not extend to "a business decision or judgment made in connection with the on-going operation of a

business."  *Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1023 (E.D. Mo. 2002), *aff'd*, 313 F.3d 863 (8th

Cir. 2002) (employer's discretion in determining salaries is business judgment); *see also Hughes*

*Aircraft Co. v. Jacobson*, 525 U.S. 432, 444-45 (1999) (decisions regarding "who is entitled to receive

Plan benefits and in what amounts, or how such benefits are calculated" do not implicate fiduciary

duties, even if motivated by desire to reduce labor costs).

Consequently, ERISA does not require "day-to-day corporate business transactions, which may

have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest

of plan participants."  *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988) (collecting cases).

"Under ERISA, an individual acts in a fiduciary capacity only to the extent that s/he exercises

discretionary control or responsibility over plan administration or assets.  The discretion required to

invoke ERISA's fiduciary obligations <u>must relate to fiduciary functions</u> such as plan management or

administration."  *Eckelkamp*, 201 F. Supp. 2d at 1023 (emphasis added).  Accordingly, for Plaintiffs to

state a claim under ERISA, Defendants' decisions regarding payment of wages would have to be subject

to ERISA's fiduciary standard of care.

Maintaining this distinction between business decisions and ERISA fiduciary decisions,

numerous courts have held that payroll decisions are business judgments that fall outside of ERISA's

---

[27] *See also Pegram*, 530 U.S. at 225-26 (ERISA permits employers to act in dual capacity as both fiduciary to plan and plan sponsor); *Beddall*, 137 F.3d at 18 ("fiduciary status is not an all or nothing proposition . . . fiduciary liability arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in broad, general terms"); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir. 1986), *cert. denied*, 481 U.S. 1016 (1987) ("The ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer.  ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.").

fiduciary scope.  For example, in *Ballaris v. Wacker Siltronic Corp*., the court rejected a claim for

breach of fiduciary duty where an employer allegedly failed to pay wages for the period in which "clean

room" workers were required to don and remove "clean" suits.  2002 WL 926272 (D. Ore. 2002).  The

court reasoned:

> [The employer's] decision whether to pay wages for changing time has only an extremely
> indirect connection to the administration of the ERISA plan.  The situation, both the
> nature of the decision and the effect on the plan, is very similar to that in *Hickman*.
> Consequently, [the employer] was not acting as an ERISA fiduciary in this regard. The
> ERISA breach of fiduciary duty claim is dismissed.[28]

*Id.* at *2.  Similarly, in *Eckelkamp*, the court concluded that a decision about compensation levels did

not implicate ERISA because "[s]etting compensation levels is a business decision or judgment made in

connection with the on-going operation of a business."[29]  201 F. Supp. 2d at 1023.  Here, too, Caritas's

decisions regarding pay practices have "only an extremely indirect connection to the administration of

the ERISA plan," and accordingly cannot support a breach of fiduciary duty claim.  *Ballaris*, at 2002

WL 926272, at *2.

　　　　Although no courts in the First Circuit have addressed this issue, a number of decisions from

district courts in other circuits have dismissed similar wage claims cloaked as ERISA claims.  *See*

*Steavens v. Elec. Data Sys. Corp.*, 2008 WL 3540070 (E.D. Mich. 2008); *LePage v. Blue Cross &*

*Shield of Minn.*, 2008 WL 2570815 (D. Minn. 2008); *Maranda v. Group Health Plan, Inc.*, 2008 WL

2139584 (D. Minn. 2008); *Veliz v. Cintas Corp.*, 2003 WL 23857822 (N.D. Cal. 2003).  As here, those

---

[28] In *Hickman*, the Eighth Circuit addressed whether an employer violated ERISA by selling a plant, terminating the
employees, and refusing to "bridge" periods of employment, which would have allowed certain employees to qualify for full
retirement under the pension plan.  The court held that the decision to terminate, rather than carry the employees on the
payroll, was a business judgment, and the plaintiffs' "attack on [the employer's] refusal to 'bridge' their periods of
employment is an attack on [its] actions as an employer and not as a plan fiduciary." 840 F.2d at 567.

[29] The court further explained:

> An employer's discretion in determining salaries is a business judgment which does not involve the
> administration of an ERISA plan or the investment of an ERISA plan's assets.  Such a decision may
> ultimately affect a plan indirectly but it does not implicate fiduciary concerns regarding plan administration
> or assets.  Business decisions can still be made for business reasons, notwithstanding their collateral effect
> on prospective, contingent employee benefits.

*Eckelkamp*, 201 F. Supp. 2d at 1023.

cases involved claims that the defendants violated ERISA by not crediting plaintiffs with wages that were allegedly due to them under the FLSA.  For example, the *LePage* court reasoned that the employer's "decision not to pay Plaintiffs overtime does not pertain to the administration of the 401(k) Plan; rather it is a business decision and, though the decision may have impacted Plaintiffs' benefits under the Plan, it does not state a claim for breach of fiduciary duty under ERISA."  2008 WL 2570815, at *6.  In addition, in another recent case litigated by Plaintiffs' counsel and asserting nearly identical claims to Plaintiffs' claims here, the Western District of New York applied this reasoning and dismissed the plaintiffs' breach of fiduciary duty claims.  *See Barrus*, , 2010 WL 3075730, at *12 ("in determining wage policy, [d]efendants were not acting as plan fiduciaries" and thus they had no duty to "investigate crediting overtime pay as compensation to determine benefits").  For the same reasons, Plaintiffs' breach of fiduciary duty claim should be dismissed in this case.

### 3. The Calculation of Benefits Credits Is a Ministerial, Not Fiduciary, Function

Finally, Plaintiffs' own characterization of their claim as involving crediting of <u>required</u> wage payments is inconsistent with their assertion that Defendants breached a fiduciary duty.  Under ERISA, one acts as a fiduciary with respect to a plan only to the extent "he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A); *see also Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 74 F.3d 20 (1st Cir. 1996) (profit sharing plan participant not ERISA fiduciary where his role was limited to "mechanical duty" and "entailed no discretionary involvement in management of the assets").  Here, Plaintiffs explicitly characterize the crediting of wage payments as an automatic and unavoidable entitlement.  *See* Am. Compl., ¶ 123 (Defendants breached fiduciary duties by "failing to credit [Plaintiffs] with all of the hours of service for which they were <u>entitled</u> to be paid") (emphasis added).  Because these actions lie outside of the sphere the plan administrator's discretionary judgment, there can be no breach of fiduciary duty.

The applicable Department of Labor ("DOL") regulations expressly provide that crediting a plan is a purely "ministerial function," not an ERISA fiduciary function.  *See* 29 C.F.R. § 2509.75-8.  These

regulations directly undercut Plaintiffs' contention that Caritas breached a fiduciary duty under ERISA

by failing to properly calculate their compensation credits.  According to the DOL:

> [A] person who performs purely ministerial functions . . . for an employee benefit plan
> within a framework of policies, interpretations, rules, practices and procedures made by
> other persons is not a fiduciary because such person does not have discretionary authority
> or discretionary control respecting management of the plan, does not exercise any
> authority or control respecting management or disposition of assets of the plan, and does
> not render investment advice with respect to any money or other property of the plan and
> has no authority or responsibility to do so.

29 C.F.R. § 2509.75-8 (D-2).   Moreover, the enumerated examples in this section of the regulations

<u>specifically include</u> "calculation of services and compensation credits for benefits."  *Id*.   Neither the

decisions regarding the payment of wages to Plaintiffs, nor the calculation of compensation credits, were

decisions made in a fiduciary capacity.  Accordingly, the Court should dismiss Plaintiffs' breach of

fiduciary duty claim.

### C.     Plaintiffs' Recordkeeping Claim Fails

In their second cause of action, Plaintiffs allege that Defendants failed to keep accurate records

under ERISA.  They purport to bring their claim pursuant to ERISA §§ 209(a) and 502(a)(3).  As

explained below, because Plaintiffs' ERISA claim consists of a claim for retirement benefits (or for

benefit contributions), it is not redressable under either of these sections because (1) § 209(a) does not

provide for a private right of action, and (2) § 502(a)(3) does not provide for recovery of benefits.

### 1.     <u>Section 209(a) Does Not Create a Private Cause of Action</u>

By its terms, § 209(a) requires covered employers to comply with regulations prescribed by the

U.S. Secretary of Labor.  This section requires that covered employers maintain records with respect to

each of their employees and articulates the penalty for failure to comply:

> If any person who is required, under subsection (a) of this section, to furnish information
> or maintain records for any plan year fails to comply with such requirement, <u>he shall pay
> to the Secretary a civil penalty of $10</u> for each employee with respect to whom such
> failure occurs, unless it is shown that such failure is due to reasonable cause.

29 U.S.C. § 1059(b) (emphasis added).  As the federal courts have uniformly recognized, Congress

mandated a civil penalty payable, upon a finding of a violation, <u>only</u> to the DOL, and this provision does

not provide Plaintiffs with a private right of action.  *See Premick v. Dick's Sporting Goods, Inc.*, 2007 WL 141913, at \*6 (W.D. Pa. 2007) ("it is . . . undeniable that §1059 does not provide a private right or cause of action for affected employees"); *Colin v. Marconi Commerce Sys. Employees' Ret. Plan*, 335 F. Supp. 2d 590, 606 (M.D.N.C. 2004) (same); *Lowe v. Telesat Cablevision, Inc.*, 837 F. Supp. 410, 412 (M.D. Fla. 1993) (same).  Accordingly, this Court should dismiss Plaintiffs' "failure to keep accurate records" claim as a matter of law.

### 2.    <u>Section 502(a)(3) Does Not Provide for the Recovery of Benefits</u>

In an attempt to rescue their recordkeeping claim, Plaintiffs cloak it as a claim for equitable relief under ERISA § 502(a)(3).  Am. Compl., ¶ 124, 158.  This section, however, provides "appropriate equitable relief" only in cases where no other provision of ERISA provides a remedy.  Plaintiffs' reliance on § 502(a)(3) therefore is misplaced.  *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000) (ERISA sets forth carefully crafted remedial scheme and no remedies or causes of action are available other than those clearly articulated in statute); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47 (1985) ("The six carefully integrated civil enforcement provisions found in section 502(a) of the statute . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.").  Section 502(a)(3) provides, in pertinent part, that relief:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).  The relief available under this catch-all section is extremely limited.  *See*, *e.g.*, *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).  By its very terms, the remedy must be both "appropriate" and "equitable."  29 U.S.C. § 1132(a)(3).  The Supreme Court has held that equitable relief under this provision is "appropriate" only where relief is not available elsewhere, reasoning that "where Congress elsewhere provided

adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (internal citations omitted).

Here, Plaintiffs' second cause of action explicitly seek benefits, in the form of compensation credits, under the terms of the Plans. Am. Compl., ¶ 124. If Plaintiffs were in fact entitled to any benefits held by a covered plan, they could pursue a claim for those benefits under ERISA § 502(a)(1)(B).[30] This allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" – a claim that Plaintiffs have not asserted.[31] *See Premick*, 2007 WL 141913, at *6 (dismissing § 502(a)(3) claim where plaintiff alleged entitlement to benefits as result of failure to pay overtime because that provision, unlike other enforcement provisions, only permits plaintiff to obtain equitable relief while plaintiff sought monetary relief). Because Plaintiffs' claims appear to consist fundamentally of a claim for benefits under ERISA § 502(a)(1)(B), ERISA § 502(a)(3) provides no remedy. In fact, courts have dismissed recordkeeping claims almost identical to Plaintiffs' claims here for this very reason. *See Barrus*, 2010 WL 3075730, at *12 (holding that recordkeeping claim sought benefits plaintiffs claimed to be owed because their "401(k) account was allegedly shorted" as a result of overtime violations and dismissing claim for failure to exhaust administrative remedies) (quotations omitted). Plaintiffs' ERISA recordkeeping claim should therefore be dismissed.

---

[30] For instance, Plaintiffs' fiduciary duty claim is based on allegations that Plaintiffs were not credited with wages and overtime compensation under the plans. Am. Compl., ¶ 118-21. Plaintiffs do not allege that any <u>statutory provision</u> of ERISA <u>requires</u> that they receive such credits; rather, Plaintiffs allege that <u>the plan</u> should be <u>interpreted</u> to provide such credits. Claims for benefits that require interpretation of benefit plan language are properly brought under § 502(a)(1)(B), even when framed as claims for a breach of fiduciary duties. As the Supreme Court has recognized, § 502(a)(1)(B) "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims." *Varity Corp.*, 516 U.S. at 512.

[31] Plaintiffs have presumably declined to assert such a claim because they would be required to exhaust administrative remedies and would be subject to a more onerous standard of review.

III.    **The Court Should Dismiss Plaintiffs' RICO Count for Failure to State A Claim**

With their RICO claim, Plaintiffs pursue a draconian remedy for what is, at most, a garden-variety wage dispute.  The civil RICO statute is "quasi-criminal in nature," and thus, as the First Circuit has recognized, "[c]ivil RICO is an unusually potent weapon – the litigation equivalent of a thermonuclear device.  The very pendency of a RICO suit can be stigmatizing and its consummation can be costly."[32]  *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991); *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990); *see also Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 105 (1st Cir. 2002) ("[T]he Supreme Court has recoiled at the idea of a federal civil remedy [under the RICO statute], with treble damages and attorney's fees, [for acts that] . . . would never be pursued criminally by a competent prosecutor, let alone through a criminal RICO prosecution.").  Because of the serious consequences that attend even the mere allegation of a RICO violation, it is important for courts to dispose of unmeritorious RICO claims as early as possible in a case.  *See Wilkes v. City of Rochester*, 1998 WL 1085789, at *1 (1st Cir. 1998) (noting "need to flush out at an early stage meritless RICO and civil rights claims since the mere assertion of these claims often has a stigmatizing effect on those named as defendants") (quotations omitted); *Figueroa Ruiz*, 896 F.2d at 650 ("In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.") (citations and quotations omitted).  Courts closely scrutinize RICO claims, particularly those based on allegations of mail or wire fraud, "because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000).  Plaintiffs' RICO allegations here are baseless and cannot withstand the level of scrutiny properly applied to such claims.  Plaintiffs lack statutory standing to pursue a claim under the RICO statute, and they fail to plead adequately the elements necessary to

---

[32] In addition to inflicting reputational damage, Plaintiffs' RICO claim is designed to expand the applicable statute of limitations to four years and treble the amount of damages available.  *See* 18 U.S.C. § 1964 (authorizing treble damages for civil RICO violations); *Rodriguez v. Banco Cent.*, 917 F.2d 664, 665 (1st Cir. 1990) (four-year statute of limitations applies to RICO claims).  The FLSA has a presumptive two-year statute of limitations (extendable to three years for willful violations), and the maximum damages recoverable are double damages.  *See* 29 U.S.C. §§ 216(b), 255.

establish their RICO allegations.[33]   Moreover, Plaintiffs' potential remedies under the FLSA are more

than adequate, even if they could somehow prove – and they cannot – that Defendants acted willfully or

in bad faith.  For these very reasons, RICO claims nearly identical to Plaintiffs' claims here have been

dismissed in other cases litigated by Plaintiffs' counsel, including another case in this District that was

filed as part of their hospitalovertime.com campaign.[34]   For these reasons, Plaintiffs' RICO claim should

be dismissed.

### A.      Plaintiffs Lack Statutory Standing to Pursue Their RICO Claims

Plaintiffs lack statutory standing to assert a claim under RICO because they cannot demonstrate

that they were directly harmed by Defendants' supposed commission of a RICO predicate act.  In order

to establish statutory standing to assert a civil RICO claim, a plaintiff must first show that he personally

has been "injured in his business or property by reason of [the defendant's] violation" of RICO's

criminal provisions.  *See* 18 U.S.C. § 1964(c); *Pujol v. Shearson/Am. Express, Inc.*, 829 F.2d 1201, 1205

(1st Cir. 1987).  To satisfy this test, the plaintiff's injury must be proximately caused by "an act that is

independently wrongful under RICO." *Beck v. Prupris*, 529 U.S. 494, 505-06 (2000) (further stating that

"injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is

not sufficient to give rise to a cause of action under § 1964(c)"); s*ee also George Lussier Enter. Inc. v.

Subaru of New England*, 393 F.3d 36, 51 (1st Cir. 2004) ("To have standing in a civil RICO claim,

plaintiffs must show some direct relation between the injury asserted and the injurious conduct alleged.

Plaintiffs may not succeed merely by proving that the predicate acts were a 'cause in fact' of the

---

[33] Plaintiffs fail to identify the specific section of the RICO statute that they claim Caritas has violated.  As their Fourth Cause
of Action, however, Plaintiffs state that "Defendants conducted or participated, directly or indirectly, in the conduct of the
enterprise's affairs through a pattern of racketeering activity . . . ." Am. Compl., ¶ 164.  This assertion tracks the language of
§ 1962(c), and thus it appears that their allegations arise under that section.  To the extent that they attempt to assert claims
pursuant to any other section, they fail even to plead the basic elements of such a claim.  For example, Plaintiffs mention §
1962(a) in passing in the Complaint, but they cannot establish a violation of this section because they have not alleged that
any of the Defendants have "use[d] or invest[ed], directly or indirectly, any [income derived from racketeering activity] in
acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of
which affect, interstate or foreign commerce." *See* Am. Compl., ¶ 138; 18 U.S.C. § 1962(a).

[34] *See Cavallaro v. UMass Med. Ctr.*, 2010 WL 3609535, at *5 (D. Mass. 2010); *Barrus v. Dick's Sporting Goods*, 2010 WL
3075730, at *16 (W.D.N.Y. 2010).

plaintiffs' injuries; rather, Section 1964(c) requires that the defendant's specified acts of racketeering were the proximate cause of the plaintiffs' injuries.") (internal citations and quotations omitted); *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir. 1996) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.") (quoting *Sedima v. Imrex Co*., 473 U.S. 479, 496 (1985)).

The thrust of Plaintiffs' Amended Complaint is that they were injured as a result of Caritas's allegedly improper practices with regard to calculation of time worked and wages due. *See* Am. Compl., ¶ 164 ("Defendants' conduct, and the conduct of other members of the enterprise, injured Plaintiffs and Class members by refusing [sic] to pay their regular or statutorily required rate of pay for all hours worked."); Am. Compl., ¶ 127 ("Defendants' Scheme consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiff [sic] and Class Members their regular or statutorily required rate of pay. . . ."); Am. Compl., ¶¶ 80-107 (describing allegations regarding failure to include work performed during meal breaks, pre- and post-shift work, and training time in wage calculations). FLSA violations, however, are not RICO predicate acts, and thus alleged harm arising from such violations cannot give rise to a RICO claim. *See* 18 U.S.C. § 1961 (defining "racketeering" activity); *Beck*, 529 U.S. at 505 (injuries not caused by racketeering acts cannot give rise to standing under RICO).

In an attempt to circumvent the predicate act requirement, Plaintiffs attempt to cloak their wage claims in mail and wire fraud clothing, asserting that Caritas committed racketeering acts by "transmitting misleading payroll checks via wire and mail" in furtherance of "a scheme to cheat Plaintiff [sic] and Class Members out of their property . . . including their wages and/or overtime pay. . . ." *See* Am. Compl., ¶¶ 127. Plaintiffs' RICO claim fails, however, because they allege only that Caritas used the alleged mail and wire transmissions to conceal supported wage and hour violations, and they make no claim that Defendants' use of the mail or wires caused them any <u>independent</u> harm. *See* Am. Compl., ¶ 113 ("[t]hrough the paystubs and payroll information it provided to employees, Caritas . . . .<u>concealed</u> from its employees that they did not receive compensation for all the work they performed")

28

(emphasis added); Am. Compl., ¶ 115 ("defendants engaged in such conduct . . . to conceal from the Plaintiffs and Class Members their rights and to frustrate the vindication of employees' federal rights") (emphasis added); Am. Compl. ¶ 127 ("Defendants' Scheme consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiff and Class Members their regular or statutorily required rate of pay for all hours worked in violation of federal law, as described previously in this Complaint, and of concealing from Plaintiffs and Class Members the fact that they were being deprived of their wages.").[35]   In the First Circuit, it is clear that mail or wire fraud conducted for the purpose of concealing other wrongful acts cannot proximately cause injury, and thus cannot ground a civil RICO action.  *See George Lussier*, 393 F.3d at 52 (holding that allegations that car distributor committed mail and wire fraud for "fraudulent concealment" of scheme to make dealers purchase vehicles with unwanted options insufficient to confer standing to assert RICO claim); *see also Leung v. Law*, 387 F. Supp. 2d 105, 122 (E.D.N.Y. 2005) (mail fraud consisting of mailing of fraudulent tax returns to conceal theft of money "may have concealed, but did not cause, [plaintiff's] losses" and thus did not confer standing); *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 587 (S.D.N.Y. 1995) (allegation that plaintiffs' "ability to discover and/or prevent defendants' other wrongful acts was somewhat impaired or limited" as result of mail and wire fraud did not confer standing because "[a]n act which proximately caused an injury is analytically distinct from one which furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act"); *Zee-Bar, Inc. v. Kaplan*, 792 F. Supp. 895, 905 (D.N.H. 1992) (where plaintiff alleged that defendant committed mail fraud by mailing fraudulent tax returns "[the defendant] may have forged the returns to cover negligence, but it is the negligence and not the forgery from which the injury flows").

---

[35] Plaintiffs assert in conclusory fashion that the "misleading payroll checks that defendants mailed . . . were a proximate cause of Plaintiffs' and Class Members' injuries."  Am. Compl., ¶ 130. This bald assertion is insufficient to ground their claim.  *See Twombly*, 550 U.S. at 555 (requiring "more than labels and conclusions" to ground a complaint).  Plaintiffs provide no explanation as to how these documents allegedly caused them injury except to state that the documents concealed Caritas's other supposed wrongdoing.

Put somewhat differently, any injury Plaintiffs suffered resulted from the alleged failure to include certain hours worked in calculating their pay.  Such acts necessarily would have occurred *prior to and separate from* the transmission of the allegedly fraudulent pay checks.  That transmission thus cannot serve as the proximate cause of Plaintiffs' alleged injury.  *See U.S. v. Christopher*, 142 F.3d 46, 53 (1st Cir. 1998) (distinguishing case where alleged mail and wire fraud scheme "followed the loss" and noting that, in such case, mail or wire fraud could not be established because deceptive conduct did not cause plaintiffs' injury); *see also Barrus*, 2010 WL 3075730, at *16 (addressing complaint filed by Plaintiffs' counsel and almost identical to Amended Complaint here and holding that plaintiffs had not adequately alleged "that the harm they suffered was as a consequence of the predicate acts listed in the RICO statute" ant that "the harm they assert is as a result of alleged violations of FLSA").  Plaintiffs lack statutory standing to assert a RICO cause of action, and their claim must be dismissed.

### B.      Plaintiffs Cannot Establish the Predicate Racketeering Act of Mail or Wire Fraud

Even if Plaintiffs could establish standing to pursue their RICO allegations, Plaintiffs' RICO claim would nonetheless fail because Plaintiffs do not adequately plead a predicate racketeering act. Plaintiffs base their RICO claim upon allegations that Caritas committed mail and wire fraud by transmitting pay statements to its employees that misstated the hours that they worked.  Am. Compl., ¶¶ 127-30.  Plaintiffs fail to appreciate, however, that "not every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud.  Rather, the scheme must be intended to *deceive* another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct."  *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) (citations omitted) (emphasis in original); *see also Sawyer*, 85 F.3d at 732 (To establish mail fraud, "a demonstrated intent to deceive is required.").  In order to constitute illegal mail or wire fraud, a scheme must be "calculated to deceive persons of ordinary prudence."  *McEvoy*, 904 F.2d at 791-92 (quoting *U.S. v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980)).  Where fraud allegations are premised on the transmission of documents that the sender should know will not deceive a recipient

of ordinary prudence, there can be no intent to deceive, and no fraud can result.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006) (granting motion to dismiss RICO claim because "letters cannot amount to mail fraud [] where the sender knows the recipient will not be deceived by the falsehoods"); *McGee v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2132439, at *6 (E.D.N.Y. 2009) (granting motion to dismiss RICO mail fraud claims because allegedly false insurance reports could not be "calculated to deceive" plaintiff doctor seeking insurance reimbursement, as doctor "kn[ew] full well [] his own patients' true condition"); *see also U.S. v. Pendergraft*, 297 F.3d 1198, 1209 (11th Cir. 2002) (reversing mail fraud conviction because defendants "knew that they could not deceive [the recipient of the allegedly fraudulent mailings]" and thus "they could not have had an intent to deceive").

Even if Plaintiffs were somehow to prove that Caritas intentionally misstated in pay statements the hours Plaintiffs worked, such acts would fail to constitute mail or wire fraud.  Plaintiffs knew full well how much time they spent performing their jobs because they performed this work themselves.  A person of ordinary prudence cannot be deceived as to his or her own conduct.  *See Sosa*, 437 F.3d at 941 ("Because these statements concerned Sosa's <u>own conduct</u>, [the defendant] could not have intended that he would be deceived by them and was therefore necessarily lacking in the intent requisite to have committed wire fraud.") (emphasis added); *Pendergraft*, 297 F.3d at 1209 (mailing affidavits falsely accusing recipient of threatening conduct could not constitute mail fraud because senders "were aware of [the recipient's] position [that he had not made threats] . . . and they knew their affidavits would not trick [the recipient] into admitting otherwise").  In fact, another court in this District addressing claims almost identical to those asserted in the Amended Complaint in another case in Plaintiffs' counsel's hospitalovertime.com campaign held that an employer's transmission of allegedly fraudulent pay information to its employees makes discovery of the alleged fraud <u>more</u> likely, and thus cannot serve as an act in furtherance of the scheme.[36]  *See Cavallaro v. UMass Med. Ctr.*, 2010 WL 3609535, at *5 (D.

---

[36] The *Cavallaro* plaintiffs were represented by Plaintiffs' counsel, who targeted the UMass hospital system as part of their hospitalovertime.com campaign.

Mass. 2010) ("[T]he plaintiffs . . . know how many hours they have worked and how much money they have been paid.  Merely by looking at the face of their paychecks, the plaintiffs can ascertain whether they are being underpaid.  And because those paychecks put them on notice of the alleged fraudulent scheme, plaintiffs have failed to state a cause of action under § 1961(c).").  Plaintiffs thus cannot establish mail or wire fraud.

## IV.   THE COURT SHOULD DISMISS PLAINTIFFS' ESTOPPEL CLAIM

As their fifth cause of action, Plaintiffs attempt to assert a claim of "estoppel."  Am. Compl., ¶ 166.  This claim is entirely derivative of Plaintiffs' FLSA, RICO, and ERISA claims and should be dismissed to the extent that those claims fail.  In addition, Plaintiffs' estoppel claim fails because they misconstrue the nature of the estoppel doctrine.  Equitable estoppel is purely a defensive concept: "It is available only for protection, and cannot be used as a weapon of assault.  *Dickerson v. Colgrove*, 100 U.S. 578, 580-81 (1879) (emphasis added); *see also Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, 2009 WL 2175585, at *8 (W.D. Pa. 2009) ("estoppel serves as a shield and not a sword").[37] Numerous courts have recognized that because it cannot be used offensively, estoppel does not – indeed, cannot – give rise to a cause of action.  *See Val-Land Farms, Inc. v. Third Nat'l Bank in Knoxville*, 937 F.2d 1110, 1115 (6th Cir. 1991) ("[E]quitable estoppel does not create a cause of action under Tennessee law."); *Wheat Ridge Urban Renewal Auth. v. Cornerstone Group XXII, LLC*, 176 P.3d 737, 741 (Colo. 2007) ("[T]he doctrine of equitable estoppel is not a cause of action at all, but rather a defensive doctrine."); *Hoye v. Westfield Ins. Co.*, 487 N.W.2d 838, 842 (Mich. 1992) ("the general rule is that equitable estoppel is a doctrine, not a cause of action . . . . [and it] therefore provides no remedy such as damages"); *see also Adrian v. Mesirow Fin. Structured Settlements*, LLC, 2009 WL 2596508, at *1 n.3 (D.P.R. 2009) ("Plaintiff seems to confuse theories of liability with other sorts of assertions in her amended complaint: she lists as [a] claim . . . 'equitable estoppel' [which is a] common theor[y] of

---

[37] Plaintiffs' counsel has failed in asserting this argument before; *Kuznyetsov* is another case filed as part of the hospitalovertime.com campaign.  *See* 2009 WL 2175585, at *8 (W.D. Pa. 2009).

defense."). By its very nature, Plaintiffs' estoppel "cause of action" fails to state a claim upon which

relief may be granted, and for that reason it should be dismissed.[38]

## V.   THE COURT SHOULD DISMISS PLAINTIFFS' AMENDED COMPLAINT WITH PREJUDICE AND SHOULD HOLD PLAINTIFFS AND THEIR COUNSEL ACCOUNTABLE FOR SQUANDERING PUBLIC AND PRIVATE RESOURCES[39]

Plaintiffs have had more than sufficient opportunity to cure the deficiencies of their claims and

have failed to do so. Defendants filed their original motion to dismiss pointing to the same pleading

inadequacies and substantive deficiencies as are identified here more than ten months ago, and after that

motion was granted, Plaintiffs were permitted to amend their Complaint. Plaintiffs squandered that

opportunity, and instead of making any effort to cure the defects identified in Defendants' motion to

dismiss and the Court's Order, Plaintiffs filed what is functionally the same cookie-cutter

hospitalovertime.com form pleading. In such circumstances, dismissal with prejudice is appropriate.

*See U.S. v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 242 (1st Cir. 2004) (district court properly

dismissed claims without leave to amend after it had already "afforded [plaintiff] a generous opportunity

to sharpen his pleadings") (abrogated on other grounds in *U.S. ex rel. Gagne v. City of Worcester*, 565

F.3d 40 (1st Cir. 2009)); *McGee v. UMass Corr. Health,* 2010 WL 3464282, at *6 n.7 (D. Mass. 2010)

(denying leave to amend where "plaintiff has made no real attempt to file an amended complaint

---

[38] Even if estoppel were cognizable as a cause of action – which it is not – Plaintiffs' estoppel claim would fail because Plaintiffs have not adequately pleaded all of the elements of that doctrine. A party may only take advantage of the doctrine where it demonstrates that "(1) the party to be estopped made a definite misrepresentation of fact to another person having reason to believe that the other would rely upon it; (2) the party seeking estoppel relied on the misrepresentations to its detriment; and (3) the reliance was reasonable." *See Mimiya Hosp. Inc. v. U.S. Dep't Health & Human Servs.*, 331 F.3d 178, 182 (1st Cir. 2003) (quotations omitted); *see also Safe Env't of Am., Inc, v. Employers Ins. of Wausau*, 278 F. Supp. 2d 121, 126-27 (D. Mass. 2003). Plaintiffs make vague allegations that "when questioned, the defendants falsely assured Plaintiffs and Class Members that defendants understood federal state and labor laws and . . . were properly paying Plaintiffs and Class Members." Am. Compl., ¶ 149. They fail to provide any information about who made these alleged representations, to whom they were made, or whether the context was such that reliance upon the statements was reasonable. These allegations are far too vague and conclusory to suffice under the *Twombly* and *Iqbal* pleading standards. In addition, detrimental reliance requires a party to demonstrate that it has suffered harm as a result of the reliance. *Mimiya*, 331 F.3d at 182. Plaintiffs fail to assert that they have suffered any harm as a result of Defendants' alleged misrepresentations, but rather that they may be harmed in the future if Defendants assert a statute of limitations defense.

[39] In compliance with Fed. R. Civ. P. 11(c)(2), Defendants have served a motion for sanctions on Plaintiffs' counsel contemporaneously with the filing of this Motion. Defendants reserve the right to file such motion for sanctions with the Court, to the extent that Plaintiffs fail to respond to the motion in a manner that satisfies their counsel's obligations under Rule 11.

addressing the Court's concerns, and . . . providing him with a further opportunity would simply reward a lack of diligence"); *Curran v. FedEx Ground Package Sys., Inc*., 593 F. Supp. 2d 341, 345 (D. Mass. 2009) ("[T]he plaintiffs have known of the defendants' objection to the adequacy of the pleading for several months, but have made no attempt to allege additional facts to satisfy the *Twombly* standard.  If the plaintiffs have information they could allege to satisfy the standard, but have held it back, they are guilty of undue delay.  If they do not have the information, giving them leave to amend is futile.  In either case, leave to amend should be denied.").

In addition, the Court should require Plaintiffs and their counsel to pay Defendants' reasonable costs, including attorneys' fees, for bringing the present motion.  Plaintiffs have imposed an unconscionable burden on an institution engaged in the care of the sick and diverted that institution's severely limited resources to respond to yet another class action complaint premised on nothing but Plaintiffs' counsel's supposition that all hospitals are engaged in rampant wage and hour violations and on their reckless allegations of conspiratorial behavior.  By failing to make even a colorable effort to substantiate their claims in this matter, Plaintiffs have shown an intransigent refusal to accept the pleading standards imposed by the Supreme Court in *Twombly* and applied by this Court in its September 27, 2010 Order.  Under these circumstances, the Court should hold Plaintiffs and their counsel accountable for the considerable resources they have wasted.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be granted in its entirety.

Respectfully submitted,

CARITAS CHRISTI, CARITAS CHRISTI
NETWORK SERVICES, INC., CARITAS
CARNEY HOSPITAL, INC., CARITAS
GOOD SAMARITAN MEDICAL CENTER,
INC., CARITAS HOLY FAMILY HOSPITAL,
INC., CARITAS NORWOOD HOSPITAL,
INC., CARITAS SOUTHWOOD HOSPITAL,
INC., CARITAS ST. ELIZABETH'S
MEDICAL CENTER OF BOSTON, INC.,
CARITAS ST. JOHN OF GOD HOSPITAL,
INC., NORWOOD HOSPITAL, SAINT
ANNE'S HOSPITAL CORPORATION,
RALPH DE LA TORRE, M.D., RICHARD
KROPP, and CARITAS CHRISTI
RETIREMENT PLAN,

By their attorneys,

 /s/ Richard L. Alfred
Richard L. Alfred (BBO # 015000)
Barry Miller (BBO # 661596)
Sarah N. Turner (BBO # 664488)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:      (617) 946-4800
Telecopier:     (617) 946-4801

DATED: November 9, 2010

---

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2010, this document was filed through the Court's
ECF system and that Plaintiffs' counsel includes registered users designated to receive
Notices of Electronic Filings in this matter.

 /s/ Richard L. Alfred
Richard L. Alfred

---

12827628v.2