UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHLEIGH PRUELL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CARITAS CHRISTI, et al., <br><br> Defendants. | CIVIL ACTION NO. 09-CV-11466-GAO <br> **(LEAVE TO FILE GRANTED** <br> **DECEMBER 30, 2010)** |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants submit this Reply in response to Plaintiffs' Opposition to Defendants' Motion to Dismiss their Amended Complaint (docket no. 42). Plaintiffs do not dispute that their Amended Complaint is virtually identical to their original Complaint, which this Court dismissed for failure to meet the *Twombly* pleading standard in its Order dated September 27, 2010 (docket no. 31), and it is plain that Plaintiffs have done no factual investigation that would lend substance to their claims. Instead, Plaintiffs argue that with a few token changes, they have now pleaded the "magic words" that permit them to litigate this case on behalf of a class of 12,000 people in dozens of job categories without alleging any factual information whatsoever to give their claims plausibility. Contrary to their assertions, the few superficial changes reflected in the Amended Complaint are entirely insufficient to "nudge[] their claim across the line from conceivable to plausible," as required by *Twombly* and *Iqbal*. Although Plaintiffs argue that "numerous courts" have held that pleading precise wage rates and hours worked is unnecessary to state an FLSA claim, the cases on which they rely only serve to illustrate the degree to which Plaintiffs' Amended Complaint falls short. Those cases involve pleadings with substantially more factual information than Plaintiffs have put forward, and provide no support for Plaintiffs' assertion that they can proceed with a class action based on nothing more than a cookie-

cutter complaint that defines into existence three supposed "policies that the Thomas & Solomon firm contends to be in place at each of the health care systems they have sued in their HospitalOvertime.com campaign. The insufficiency of these claims is further highlighted by the fact that Plaintiffs' counsel so regards the hospital systems against whom they are litigating as interchangeable that they mistake the individual defendants in this case as executives working for an entirely different hospital system. *See* Opp. at 32 (describing individual defendants Dr. Ralph de la Torre and Richard Kropp as having a "high degree of operational control and decision-making control for the entire BMC Network.") (emphasis added). Because Plaintiffs' overtime claims are insufficiently pleaded, their derivative RICO and ERISA claims fail for that reason alone as well as a number of substantive defects. Plaintiffs have had notice of these deficiencies for well over a year but have made no attempt to cure these failings (and, indeed, cannot cure many of them). Accordingly, the Court should dismiss Plaintiffs' Amended Complaint in its entirety. Because Plaintiffs failed completely even to make a good faith effort at correcting the pleading deficiencies that resulted in the dismissal of their initial complaint, the dismissal of this Amended Complaint should be with prejudice and Defendants should be awarded their costs, including reasonable attorneys' fees, incurred in responding to Plaintiffs' two substanceless complaints.

I.  **PLAINTIFFS FAIL ADEQUATELY TO PLEAD THEIR FLSA CLAIMS**

   A.  **Plaintiffs' Amendments Add Nothing to their Complaint.**

Plaintiffs acknowledge that in order to state a claim under the FLSA, they must allege that they "performed work for which [they were] not properly compensated," and that pursuant to *Iqbal* and *Twombly*, their Amended Complaint must present factual allegations sufficient to "raise a reasonable expectation that discovery will reveal evidence of [that] necessary element." Opp. at 5. (quotations omitted). In addition, Plaintiffs concede that the sole difference between the overtime allegations in their original Complaint and those in the Amended Complaint is the addition of the assertion that they

"regularly worked hours both under and in excess of forty per week."[1] Opp. at 6. Plaintiffs argue that this conclusory statement is "plainly sufficient to cure the defect identified by this Court and to sufficiently state an FLSA overtime claim" under the applicable standards. *Id*. That argument is inconsistent with the core tenents of *Twombly* and *Iqbal*, as well as a growing body of case law holding that an employee must allege, at a minimum, an estimate of the hours she worked without compensation in order to substantiate a claim under the FLSA. *See*, *e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, 2009 WL 605833, at *4-5 (N.D. Cal. 2009); *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 546 (S.D.N.Y. 2009); *Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102 (S.D. Iowa 2008). As these cases have reasoned, a bare allegation that a plaintiff sometimes worked more than forty hours in a week is "not much more informative than an allegation that she was not paid for overtime work in general" because an individual <u>must</u> work in excess of forty hours a week in order to be entitled to overtime pay. *Villegas*, 2009 WL 605833 at *4-5. Simply stating, as Plaintiffs have here, that they sometimes worked more than forty hours a week – and, by their own admission, sometimes did not – does nothing to raise a "reasonable expectation" that they will be able to establish a violation of the FLSA. Plaintiffs have pleaded no other facts that could possibly lend plausibility to their claims, and therefore their FLSA claims must be dismissed.

Plaintiffs argue that "numerous courts" have held that "an FLSA claim is sufficiently stated when it is alleged merely that hours were worked in excess of 40 and were not properly compensated." Opp. at 7. The cases that they deem "instructive," however, involve pleadings that were substantially

---

[1] Plaintiffs explain that their allegation that they sometimes worked less than 40 hours per week relates to a "gap time" claim. Plaintiffs' "gap time" theory is based on an unpublished Western District of Pennsylvania decision that states that an employee may recover payment at his regular rate for non-overtime hours where he also worked overtime. *See* Opp. at 6 (citing *Barvinchak v. Indiana Reg'l Med. Ctr.*, 2007 WL 2903911, at *4-*8 (W.D. Pa. 2007). That theory is inconsistent with the *Klinghoffer* rule that this Court applied in its September 27, 2010 Order. *See* Order at 4 (citing *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960). That well-established rule holds that no FLSA violation occurs with respect to non-overtime hours unless the total wage paid to an employee in a given workweek divided by the total number of hours worked falls below the minimum wage rate. *See id.* There is no factual allegation that this occurred here.

more detailed than the Amended Complaint here. For example, in *In re Bank of America*, the complaint included a detailed list of tasks that the plaintiffs allegedly performed "off the clock":

> According to the complaint, call center employees are routinely required to perform a number of pre-shift tasks for which they are not compensated, including finding a computer; retrieving headsets and other "necessary equipment" from their lockers; logging into the computer and network; opening relevant computer programs and software applications; reviewing memoranda and e-mail; and completing other tasks essential to the performance of their jobs. Moreover, plaintiffs allege that the Bank does not compensate call center employees for certain post-shift tasks, such as shutting down relevant computer programs and software applications; logging off the computer and network; cleaning up the employee's workstation; returning equipment to the employee's locker; and completing other essential tasks.

2010 WL 4180567, at *1 (D. Kan. 2010). Similarly, in *Nicholson v. UTi Worldwide, Inc.*, the plaintiff forklift operators alleged that they "work[ed] before their paid shifts donning special clothing and protective gear, locating forklifts, inspecting forklifts, completing inspection documents, changing forklift batteries, logging into computer systems and applications, obtaining supplies, and driving or walking to assigned work areas." 2010 WL 551551, at *1 (S.D. Ill. 2010). Given this extensive detail concerning the type of allegedly uncompensated work performed, it is no surprise that the courts in those cases found the plaintiffs' respective claims "plausible," despite the absence of a specific allegation of the number of hours worked.

Plaintiffs' Amended Complaint here stands in sharp contrast to the pleadings at issue in the cases they cite. Plaintiffs here plead <u>no</u> facts regarding the work for which they claim not to have been paid. Indeed, they could not do so, when they seek to assert claims on behalf of individuals ranging from phlebotemists to cafeteria workers, whose job duties – and any supposed pre- and post-shift activities – are radically different from one another. Instead, Plaintiffs rely in their Amended Complaint, as they did in their initial Complaint, entirely on the so-called "policies" that they have defined into existence at Caritas and each of the other health care systems sued in the HospitalOvertime.com campaign. For example, Plaintiffs state that they have supported their claims by referring to an "Unpaid Preliminary and Postliminary Work Policy." Plaintiffs describe that

"policy" as follows: "defendants failed to pay plaintiffs and class members for all time spent performing work before and/or after the end of their scheduled shift." Opp. at 3. It is clear from this description that this "Unpaid Work Policy" is not a policy at all – it is nothing more than the label Plaintiffs have chosen to give to their entirely unsupported conclusion that Caritas failed to pay them for time worked off-the-clock. As noted in Defendants' Motion, Plaintiffs have not even provided factual allegations regarding at which of the dozen entities they claim to have worked.[2] There can be no doubt that such an anemic pleading fails, just as the initial pleading, to meet the *Twombly* standard, despite its needless verbosity.

### B. Plaintiffs' Class Claims Are More Deficient than their Individual Claims

Even if Plaintiffs had expended some effort to substantiate their individual claims, the remarkably sweeping class and collective action claims they seek to prosecute in this matter would still necessarily fail. As the Supreme Court explained in *Twombly*, the Court's purpose in clarifying the Rule 8 standard was to prevent claims of marginal merit from squandering the resources of defendants and the courts. *Twombly*, 550 U.S. at 558. Class claims have a considerable potential to "up the ante" in litigation and in settlement negotiations, and thus this imperative is even stronger in putative class cases.

Plaintiffs argue that "a pre-discovery motion to dismiss and/or strike is an improper and premature vehicle for challenging class action allegations and should thus be denied on that basis alone." Opp. at 10. This argument misstates the law. "After *Twombly*, courts . . . have found that class allegations must also comply with Rule 8(a) in order to proceed to class discovery." *Nicholas v.*

---

[2] Plaintiffs argue that Defendants are "precluded" from arguing that Plaintiffs have not adequately alleged an employer-employee relationship with each of the fourteen defendants named in the Amended Complaint because of statements made by the Court in its September 27, 2010 Order. Opp. at 1. Plaintiffs misinterprets that Order. The Order comments only on the threshold for establishing an employer-employee relationship with a single entity. Order at 3. Defendants have argued here that Plaintiffs must either allege such a relationship with respect to <u>each</u> defendant or plead a joint employer relationship, neither of which Plaintiffs have done. Motion at 9 n.6 (citing *Diaz v. Consortium for Worker Educ.*, 2010 WL 3910280, at *4 (S.D.N.Y. 2010)). Where a party raises arguments that have not yet been considered, courts in this district have counseled against treating a prior decision as "law of the case." *See Vermont Pure Holdings Ltd. v. Nestle Waters N. Am.*, 2006 WL 839486 at *9 n.8 (D. Mass. 2006).

*CMRE Fin. Servs., Inc.*, 2009 WL 1652275, at * 4 (D.N.J. 2009); *see also Cox v. Allstate Ins. Co.*, 2009 WL 2591673 at *4 (W.D. Okla. 2009) (striking class allegations where plaintiffs' "bare assertions . . . amount to nothing more than a formulaic recitation of the elements necessary for class certification.") (quotations omitted); *Hodczak v. Latrobe Specialty Steel Co.*, 2009 WL 911311 at *9 (W.D. Pa. 2009) ("Having already found that plaintiffs have not pled any facts in the complaint to support a collective action claim, they have not demonstrated that they are entitled to the discovery they seek and those claims are properly dismissed."). These cases reason that the axiom that "[d]iscovery should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded" applies equally to class and individual allegations. *Smith v. Lyons, Doughty & Veldhuius, P.C.*, 2008 WL 2885887 at *5 (D.N.J. 2008) (dismissing class allegations where plaintiff's complaint "allege[d] no facts suggesting that [defendant] had a policy or practice" affecting putative class).

Accordingly, Courts in this District have dismissed FLSA claims on behalf of putative class members in "unspecified jobs, at unspecified places" where, as here, their claims were based on nothing more than a bare "legal conclusion that employees were not paid overtime duly owed." *See Landry v. Peter Pan Bus Lines, Inc.*, No. 09-cv-11012 (D. Mass. Nov. 20, 2009) (attached to Motion as Exhibit B). Plaintiffs' Amended Complaint provides a vivid example of an effort to exploit the *in terrorem* effect presented by class action claims. Plaintiffs should not be permitted to attempt to use the prospect of a massive class action litigation premised on nothing more than "policies" that are unsupported by any substantive allegations to leverage pressure on Caritas Christi.

### C. Plaintiffs Have Not Adequately Pleaded Claims Against the Individual Defendants

In attempting to rehabilitate their claims against individual defendants Ralph de la Torre and Richard Kropp, Plaintiffs rely exclusively on an earlier-filed case in their HospitalOvertime.com campaign, *Gordon v. Kaleida Health*, which involved similar pleadings to Plaintiffs' Amended Complaint. Plaintiffs provide no logical reason why that case, rather than the more recent and better

reasoned *Tracy v. NVR, Inc.*, 2009 WL 3153150, (W.D.N.Y.) (*Tracy I*), *adopted in part* __ F. Supp. 2d __, 2009 WL 3647862 (W.D.N.Y.) (*Tracy II*), which involved nearly identical allegations, should guide this Court's analysis. In fact, the *Tracy* decisions offer a far more compelling analysis than does the *Gordon* decision. *Gordon* was decided prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, and thus lacks benefit of the guidance provided in that opinion. *Iqbal* specifically addressed the pleading standard for claims against individual defendants. *See* 129 S.Ct. at 1952 (addressing sufficiency of claims against federal officials and holding that plaintiff had not alleged sufficient facts to plausibly suggest their individual liability). *Tracy*, which was decided after the *Iqbal* decision, relies heavily on that precedent in analyzing – and ultimately rejecting – allegations nearly identical to those here. *See* 2009 WL 3153150, at *5-6. Plaintiffs argue that *Gordon* is "more applicable" to this case because it involved allegations "against individuals in the healthcare industry," but this is a distinction without a difference – the Rule 8 standard does not vary based on the industry of the defendant. In light of *Iqbal* and *Tracy*, the allegations against Dr. de la Torre and Mr. Kropp must be dismissed.

### D. Plaintiffs' FLSA Claims Should Be Dismissed with Prejudice

Plaintiffs argue throughout their Opposition that, in the event that any of their claims are dismissed a second time, they should be granted leave to replead them. As Defendants noted in their Motion, however, Plaintiffs have been on notice of the deficiencies of their claims for more than a year. They have had more than sufficient opportunity to cure those deficiencies and have failed to do so. This Court faced virtually the same situation in *Curran v. FedEx Ground Package Sys., Inc.*, 593 F. Supp. 2d 341, 345 (D. Mass. 2009). There, the Court denied leave to re-plead, stating that "the plaintiffs have known of the defendants' objection to the adequacy of the pleading for several months, but have made no attempt to allege additional facts to satisfy the *Twombly* standard. If the plaintiffs have information they could allege to satisfy the standard, but have held it back, they are guilty of undue delay. If they do not have the information, giving them leave to amend is futile." For precisely the same reasons, leave to replead should be denied in this case.

## II.   PLAINTIFFS' RICO CLAIMS FAIL.

Plaintiffs' RICO claims must be dismissed because: (1) Plaintiffs have not pleaded their underlying fraud allegations with specificity as required by Rule 9(b); (2) Plaintiffs fail to allege that Defendants committed predicate acts of racketeering, offering no allegations to support an inference that Defendants made intentional misrepresentations that constitute mail fraud; and (3) Plaintiffs lack statutory standing under RICO because the injuries they claim could not have been caused by a RICO predicate act.  While Plaintiffs expend significant effort – for a second time – opposing arguments that Defendants have never made, including an imagined argument that RICO creates a burden-shifting scheme, they fail to present any viable response to the grounds for dismissal that Defendants have identified.

### A.   Plaintiffs Fail to Satisfy the Specificity Requirement of Rule 9(b)

Plaintiffs' RICO claims fail at the most basic level because they have failed to identify any specific communication by any defendant that could constitute an instance of mail fraud.  As Plaintiffs have acknowledged, in order to adequately plead the mail fraud allegations that underlie their RICO claim, they must specifically "state the time, place, and content of a misleading mailing." Opp. at 14 (citing *Dickey v. Kennedy*, 583 F. Supp. 2d 183, 187 (D. Mass. 2008)).  Plaintiffs have not approached this level of specificity, even with respect to a single allegedly fraudulent mailing or wire transmission. In an attempt to salvage their claims, Plaintiffs characterize their Rule 9(b) obligations in a manner wholly incompatible with First Circuit precedent.  *See id.* (arguing that Plaintiffs have satisfied 9(b) without identifying any specific mailings because "[a]ll that is required is that defendants have fair notice of the fraud alleged against them").  The First Circuit has never approved such a lenient formulation of the Rule 9(b) requirements, and thus Plaintiffs' assertion that they adequately state a RICO claim by pleading merely that there are misstatements in some of the paychecks, paystubs or other "payroll information" issued to Caritas's 12,000 employees over a period of several years is

plainly incorrect.[3]

Unable to explain how their RICO claims could survive in this jurisdiction, Plaintiffs rely on rulings from earlier-filed cases in the HospitalOvertime.com campaign in which RICO claims survived because of more lenient applications of Rule 9(b) permitted in another judicial circuit. *See* Opp. at 15; *Kuznyetsov v. West Penn Allegheny Health Sys.*, 2009 WL 2175585 (W.D. Pa. 2009) (applying less rigorous Rule 9(b) standard articulated in *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3rd. Cir. 2003), which holds that plaintiffs need not plead the date, time and place of fraud, but rather may satisfy their pleading obligations by providing any available "means of injecting precision and some measure of substantiation into their allegations of fraud"); *Camesi v. Univ. of Pittsburgh Med. Ctr.,* 2009 WL 2940067 (W.D. Pa. 2009) (same).[4]  The First Circuit has rejected any such slackening of the pleading requirement, strenuously and repeatedly affirming that under Rule 9(b), "the pleader is required to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud." *Feinstein v. Resolution Trust Co.*, 942 F.2d 34, 42 (1st Cir. 1991); *see also Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 244 (1st Cir. 2006) (affirming dismissal of RICO wire fraud claims because plaintiffs "did not make the requisite allegations identifying specific interstate phone calls by time, place and content"); *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir., 1997) ("under 9(b), a pleader must state the time, place and content of the alleged mail and wire communications perpetrating [the] fraud"). Having failed to

---

[3] Plaintiffs claim that a case from the District of Massachusetts stands for the proposition that strict compliance with the Rule 9(b) requirements articulated by the First Circuit is unnecessary so long as "fair notice" is provided. *See* Opp. at 11 (citing *Blackman v. Smirnov*, 2008 WL 4874949, at *2 (D. Mass. 2008)). Plaintiffs misinterpret this case. The court in *Blackman* specifically noted that Rule 9(b) "requires that the particular times, dates, places or other details of the alleged fraudulent involvement of the actors be alleged." 2008 WL 4874949, at *2. It went on to find that those strict requirements were met – thereby providing the defendant with "fair notice" of the claim – as the complaint in fact "state[d] the who, what, where, and when of the alleged misrepresentations," including two specific dates of incidents related to the claims. *Id.*

[4] Plaintiffs also cite two other cases, but they are inapposite. *Stickle v. SCI Western Market Support Center* addresses wage-related RICO allegations, but it does not analyze the adequacy of those claims under Rule 9(b). *See* 2008 WL 4446539 (D. Ariz. 2008). *Chomboil v. Fairfield Resorts, Inc.* similarly fails to address whether the plaintiffs properly stated the time, place, and content of the fraudulent statements, but rather addresses only whether paychecks can serve as fraudulent mailings. 428 F. Supp. 2d 437, 443-44 (E.D. Va. 2006).

identify any particular communication by any Defendant that could be deemed fraudulent, Plaintiffs have failed to plead their RICO claims with specificity as required by Rule 9(b) in the First Circuit.

Plaintiffs make the alternate argument that they should be permitted discovery and a chance to re-plead if the Court finds that they have failed to satisfy Rule 9(b). *See* Opp. at 16. It is inappropriate to grant discovery unless the defendant is likely to be the sole party in possession of the information required to be plead. *See*, *e.g.*, *Cordero-Hernandez*, 449 F.3d at 245. That clearly is not the case here. Plaintiffs admit that they have access to their own paychecks, and thus they should be able to relate the content of these documents as well as the location to which they were mailed and date of receipt. Opp. at 16 n.7. Plaintiffs have nonetheless failed to include any such information in their Amended Complaint, despite having been on notice of these deficiencies well before they filed that document. Accordingly, Discovery concerning Plaintiffs' ill-constructed RICO claim is neither necessary nor appropriate, and their claim should be dismissed with prejudice.

      **B.**     **Plaintiffs' Allegations of "Intent" Are Inadequate to Plead Mail Fraud**

Plaintiffs' RICO claims also fail because they have not offered any factual assertion to support an inference that Defendants acted with an intent to deceive Caritas' employees – or even identified any individual who supposedly manifested such an intent. Plaintiffs respond to this argument by pointing to instances in which they use the word "intent" and synonyms thereof in the Amended Complaint. Opp., p. 21. Plaintiffs ignore the substance of Defendants' argument, which is that mere repetition of these hollow words is insufficient to ground an inference that Defendants acted with the intent necessary to constitute the federal crime of mail fraud. Plaintiffs must plead at least <u>some</u> facts that support the conclusion that Defendants possessed the requisite intent. *See Iqbal*, 129 S.Ct. at 1952 (where claim requires particular state of mind, pleadings are insufficient where they do not "contain any factual allegation sufficient to plausibly suggest [the alleged] state of mind"); *United States v. Sawyer*, 85 F.3d 717, 732 (1st Cir. 1996) ("to establish mail fraud, . . . a demonstrated intent to deceive is required"). Plaintiffs have not pleaded any facts to substantiate their allegations of intent, nor do

10

they claim in their Opposition that they have pleaded such facts. In light of this deficiency, their mail fraud claims must be dismissed.

Moreover, Plaintiffs' own allegations are facially inconsistent with any assertion that Defendants intended to deceive them. Plaintiffs claim that Defendants misstated Plaintiffs' working hours on their pay stubs in order to trick Plaintiffs into believing they worked fewer hours than they actually did. *See* Am. Compl., ¶¶ 127. Courts have recognized, however, that individuals of ordinary prudence cannot be deceived as to their own prior actions. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 941 (9th Cir. 2006); *United States v. Pendergraft*, 297 F.3d 1198, 1209 (11th Cir. 2002). Plaintiffs' allegation that Defendants intended to deceive them in this manner turns on the untenable assumption that Plaintiffs would not know their own schedules or actual working hours. This Court specifically rejected that theory in the September 27, 2010 Order. Order at 6-7 ("plaintiffs should know approximately how many hours they worked per week").

Plaintiffs attempt to sidestep their awareness of their own activities by arguing that, even if they should know their approximate number of hours worked, employees "are not equipped with the knowledge to be able to recognize fraudulent omissions of time worked." Opp. at 22. That assertion is patronizing and absurd. Plaintiffs claim that the amount of work time allegedly omitted from their pay stubs was substantial because Caritas' supposed policies resulted in their regularly working before and after their scheduled shifts and through their scheduled breaks. Given that Plaintiffs undisputedly knew their approximate hours worked, repeated and substantial failures to pay for working time would be evident to any minimally observant individual.[5] No reasonable employer could assume that the preposterous plan of deception Plaintiffs attribute to Caritas could succeed, nor could any employee of reasonable prudence (much less a class of 12,000 people) be duped by it for a period of years. Thus it is no surprise that the only case in this Circuit to have addressed allegations of this nature held that

---

[5] Plaintiffs also argue that the fact that the FLSA requires employers to keep records of hours worked somehow proves that employees are incapable of doing so. This claim is absurd on its face, and no detailed records would be necessary for an employee to recognize the types of underpayment Plaintiffs allege in their Amended Complaint.

they could not support a RICO claim. *Cavallaro v. UMass Med. Ctr.*, 2010 WL 3609535, at *5 (D. Mass. 2010) ("[T]he plaintiffs . . . know how many hours they have worked and how much money they have been paid.  Merely by looking at the face of their paychecks, the plaintiffs can ascertain whether they are being underpaid.  And because those paychecks put them on notice of the alleged fraudulent scheme, plaintiffs have failed to state a cause of action under § 1961(c).").

### C. Plaintiffs Lack Statutory Standing Under RICO

Plaintiffs lack RICO standing because the supposed RICO predicate acts they attribute to Caritas (*i.e.*, mailing inaccurate paychecks) were not the proximate cause of their supposed injuries (*i.e.*, non-payment of wages).  Plaintiffs argue that RICO standing is a question of fact that can only be decided after discovery.  They are incorrect.  Where, as here, the facts pleaded in a complaint do not give rise to a plausible inference that the plaintiff may succeed in his claims, those claims must be dismissed.  As Plaintiffs acknowledge, in order to avoid dismissal of their RICO allegations on standing grounds, they must plausibly allege that they have been injured in their business or property by reason of Defendants' alleged racketeering acts.  *See* Opp. at 18.  The only link Plaintiffs are able to identify between their alleged damages of lost pay and the alleged RICO predicate act of mail fraud is that the alleged fraud concealed the acts that caused the lost pay.  Even where plaintiffs have <u>proved</u> such allegations, the First Circuit has held that this relationship is too attenuated to give rise to RICO standing.  A use of the mails that merely conceals other fraudulent activity is insufficient as a matter of law to ground a RICO claim.[6]  *See George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 393 F.3d 36, 51-52 (1st Cir. 2004).

Plaintiffs attempt to avoid this clear pronouncement of First Circuit law by arguing that they

---

[6] Plaintiffs attack Defendants' citation to the *George Lussier* case on the ground that it arises from a summary judgment decision, rather than a dismissal at the Rule 12(b)(6) stage.  This is an irrelevant distinction.  All that Plaintiffs have asserted in their Amended Complaint is that the alleged mail fraud prevented them from discovering Caritas's other allegedly wrongful acts.  The *George Lussier* case demonstrates that such evidence (even where actually shown on the summary judgment record) is insufficient to give rise to RICO liability.  Thus, it plainly would be futile and a squandering of resources to allow Plaintiffs' claims to survive a motion to dismiss only to be inevitably dismissed at the summary judgment stage.

"have not alleged that defendants' fraudulent mailings only concealed past fraud," but instead allege that the mailings "hid defendants' wage theft" and "perpetuated the scheme by allowing defendants to avoid detection," but this distinction is purely semantic.[7] Plaintiffs fail to explain how "concealing" other wrongful acts (which is insufficient under *George Lussier*) is different from "hiding" or "avoiding detection" of those acts, which they contend to be somehow sufficient to spare their claims from dismissal.  Moreover, one of the few amendments they made to their original Complaint was to add language explicitly stating that "Defendants' Scheme consisted of . . . concealing from Plaintiffs and Class Members the fact that they were being deprived of their wages."  Am. Compl., at ¶ 127.  Plaintiffs, therefore, have used the opportunity to clarify or substantiate their claims by amending their Complaint to make it even more clear that their contention is that Caritas used paychecks to conceal the supposed underlying deprivation of wages – a claim that does not confer statutory standing under RICO.

Despite this explicit language characterizing the alleged "scheme" as one aimed at depriving Plaintiffs of their wages, Plaintiffs assert a secondary injury in their Opposition: "interfere[nce] with their ability to recover on their legal claims for unpaid wages."  Opp., at 22.  First, Plaintiffs have not alleged any facts in their Amended Complaint to support an inference that they were injured in their ability to bring any claim – they provide no allegations, for example, that might allow the Court to infer that they have suffered some deterioration in their ability to establish liability or in the amount of damages they could collect.  The only theory of injury that actually appears in Plaintiffs' Amended Complaint is the alleged deprivation of wages; Plaintiffs cannot avoid the need to show proximate cause between that injury and the alleged predicate RICO acts by pointing to some other purely

---

[7] Plaintiffs attempt to support their claim to standing by citing to a pair of Supreme Court mail fraud cases, *United States v. Maze*, 414 U.S. 395 (1974) and *United States v. Sampson*, 371 U.S. 75 (1962).  Plaintiffs assert that these cases stand for the proposition that "mailings that perpetuate an ongoing scheme violate the mail fraud statute." Opp. at 21.  They neglect to mention, however, that these are <u>criminal</u> mail fraud cases, and thus RICO standing simply was not (and could not be) an issue.  It is entirely irrelevant to this case whether criminal mail fraud can be established where a criminal defendant uses the mails to conceal other crimes.  Plaintiffs here assert a civil RICO claim, and thus must plausibly allege that their injuries were proximately caused by acts of mail fraud, not merely that mail fraud occurred.

hypothetical injury.

Even if Plaintiffs' secondary theory of injury were supported by facts, alleged "interference" with Plaintiffs' ability to recover for unpaid wages would be insufficient as a matter of law to confer RICO standing in this case. "[I]njury to property is not an infinitely elastic concept." *DeMauro v. DeMauro*, 115 F.3d 94, 97 (1st Cir. 1997) (quotations omitted). For purposes of establishing a RICO claim, an injury to property cannot be asserted "until the amount of damages becomes clear and definite." *Id.* at 98. Here, Plaintiffs cannot establish the degree of any injury unless they first demonstrate (1) that they have a viable claim for wages, and (2) that Defendants' actions reduced the amount that they are eligible to receive. The First Circuit has rejected RICO claims where the outcome of the supposedly impaired legal claim – and the extent of the alleged impairment – remained uncertain at the time of a motion to dismiss. *DeMauro*, 115 F.3d at 97.[8] This theory of injury thus does nothing to salvage their RICO claims from dismissal.

## III. PLAINTIFFS' ERISA CLAIMS ALSO FAIL
### A. The Benefit Plans at Issue Are Exempt from ERISA

Plaintiffs' ERISA claims fail because such claims concern "church plans" which are not subject to the statute that Plaintiffs invoke. Plaintiffs assert that discovery is necessary to determine whether the benefits they have accrued under Defendants' plans are subject to the statute, implying that there remains some open question as to whether Caritas Christi was "associated with" a church during the time period at issue. They base this assertion on misleading, selective citation of the documents available to the Court for its judicial notice and an incomplete analysis of the applicable law.[9] The

---

[8] The cases Plaintiffs cite in support of their new theory of injury are distinguishable from the circumstances here. In both cases, the extent of the damage to the legal claim at issue was already known. In *Maley-Duff & Assocs., Inc. v. Crown Life Ins. Co.*, the plaintiffs asserted a RICO claim against a company they had unsuccessfully sued for antitrust violations. 792 F.2d 341, 344 (3rd Cir. 1986). The plaintiffs claimed that the defendant company engaged in a pattern of discovery abuses that constituted criminal obstruction of justice, and that they lost the case as a result of these acts. *Id.* Similarly, in *Deck v. Engineered Laminates*, the plaintiff alleged that the defendants had fraudulently induced him to agree to a settlement of his claims. 349 F.3d 1253, 1259 (10th Cir. 2003).

[9] Plaintiffs do not dispute that the documents previously submitted by Defendants are appropriate subjects for judicial notice. Opp., at 18.

14

information available at this stage of the proceedings, however, is more than sufficient for the Court to determine as a matter of law that the retirement plans challenged by Plaintiffs were maintained as church plans exempt from ERISA requirements, and Plaintiffs have made no factual allegations that would create a plausible inference that any other outcome is possible.

Plaintiffs assert that a three-part test must be employed to determine whether an organization is "associated with" a church. Opp., at 17. However, the test that Plaintiffs describe is only one, non-exclusive method for determining whether an organization "shares common religious bonds and convictions" with a church. *See Chronister v. Baptist Health*, 442 F.3d 648, 653 (8th Cir. 2006). "The term 'church plan' is quite broad." *Torres v. Bella Vista Hosp.*, 639 F. Supp. 2d 188, 193 (D.P.R. 2009). An organization's benefit plans fall within this ERISA exemption if the organization is "associated with" a church, in that it "shares common religious bonds and convictions with that church." *Catholic Charities of Maine, Inc. v. City of Portland*, 304 F. Supp. 2d 77, 85 (D. Me. 2004) (quoting 29 U.S.C. § 1002(23)(C)(iv)). Courts in this Circuit have found that plans are church plans even in instances where multiple elements of the three-part test have not been met because other factors established shared "religious bonds and convictions." *See Catholic Charities*, 304 F. Supp. 2d at 85 (organization "associated with" Catholic Church where it provided services "based on Roman Catholic religious teaching" and organization was listed in *Official Catholic Directory Anno Domini*). The documents Caritas submitted in support of its Motion to Dismiss provide an ample demonstration that Caritas Christi was created by the Archdiocese of Boston, with the stated purpose to "fulfill the health care mission of the Roman Catholic Church in accordance with the teachings of the Church as enunciated by the Holy Father and the Bishops in communion with him."[10] Plaintiffs make no legal argument that would give the Court reason to overlook Caritas Christi's deep historical ties to the Church.

---

[10] *See* Exhibits 1-4 to Affidavit of Barry Miller, attached to Defendants' Memorandum in Support of Their Motion to Dismiss as Exhibit A.

### B. Plaintiffs' Recordkeeping Claim Fails Because that Claim Affords Plaintiffs' Neither Economic nor Equitable Relief

Even to the extent that Caritas's benefit plans may be subject to ERISA subsequent to the transaction disclosed in Defendants' Motion to Dismiss, Plaintiffs' ERISA claims would still fail. With respect to Plaintiffs' recordkeeping claim, Plaintiffs claim that Defendants have "twist[ed] plaintiffs' claim into one for monetary benefits – which it is not" and that Defendants failed to address Plaintiffs' actual claim for equitable relief under ERISA Section 502(a)(3). The issue Defendants actually raised, however, is whether Plaintiffs can recover under that section at all, as Section 502(a)(3) provides "appropriate equitable relief" only if no other provision of ERISA provides a remedy. *See* Motion to Dismiss, pp. 24-25. Plaintiffs' reliance on Section 502(a)(3) therefore is misplaced.

In addition, contrary to the assertions in their Opposition, Plaintiffs' Amended Complaint does not seek equitable relief, but instead "only" seeks benefits under Caritas's plan in the form of additional compensation credits. Am. Compl., ¶ 124. If Plaintiffs want additional benefits under the Plan, they must bring their claim under Section 502(a)(1)(B), which they refuse to do, stating that "a suit for money damages for unpaid benefits under the plan would not be appropriate." Opp. at 29. Given that the Amended Complaint does not seek equitable relief and that Plaintiffs acknowledge that a claim for benefits must fail, it is not at all clear what Plaintiffs seek to accomplish with their recordkeeping claim. Regardless of the nature of the relief they seek, however, Plaintiffs' allegations simply do not state a claim under the recordkeeping provisions of ERISA

### C. Plaintiffs' Fiduciary Duty Claim Fails Because Plaintiffs Do Not Identify Any Fiduciary

Plaintiffs' count for breach of fiduciary duty fares no better. Plaintiffs do not even attempt to name specific fiduciaries, or specify when such persons were acting as fiduciaries or in a non-fiduciary capacity. Rather, Plaintiffs argue that this inquiry is "based on the facts of the case" and thus "is

16

inappropriate for resolution on a motion to dismiss."[11] Opp. at 25. Plaintiffs cite only a single, pre-*Twombly* case for this proposition. *See id.* (citing *Rosenburg v. Int'l Bus. Mach. Corp.*, 2006 WL 1627108 (N.D. Cal. 2006)). It is elementary, however, that an ERISA plaintiff must adequately plead her cause of action in order to survive a motion to dismiss. *See Crocker v. KV Pharm. Co.*, 2010 WL 1257671, at *16 (E.D. Mo. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949) (to survive motion to dismiss ERISA breach of fiduciary duty claim, plaintiff must plead more than "a formulaic recitation of the elements of a cause of action"). As but one example, in *Crocker*, the District Court dismissed claims against four individual directors of a company where the plaintiffs alleged only that the directors "were fiduciaries . . . in that they exercised discretionary authority or discretionary control respecting [the] management of the Plan, exercised authority or control respecting management or disposition of Plan assets and/or had discretionary authority or discretionary responsibility in Plan administration." *Id.* The court found these allegations insufficient under *Iqbal*, "in that they constitute nothing more than a recitation of the ERISA statutory language." *Id.* The allegations of Plaintiffs' Amended Complaint are no better and should be dismissed.

Plaintiffs make virtually no effort to address Defendants' argument that the conduct which Plaintiffs identify as the basis for their breach of fiduciary duty claim – Caritas's alleged failure to properly credit the plans for all hours Plaintiffs worked – simply is not a fiduciary function. As is evident from ERISA and the regulations themselves, crediting hours or pay to a benefit plan does not involve the exercise of discretion, and thus it is a ministerial, rather than fiduciary, function. *See* 29

---

[11] Plaintiffs also rely extensively on an unpublished Arizona District Court case, *Stickle v. SCI Mkt. Support Ctr.*, 2008 WL 4446539 (D. Ariz. 2008), to support their ERISA claims. *Stickle* is only one of a number of cases to have addressed the issues presented here, and Plaintiffs present no reason why this Court should adopt that case's cursory and suspect reasoning in the face of far better-reasoned opinions giving the opposite result. For example, *Stickle* distinguishes *Ballaris v. Wacker Siltronic Corp*, 2002 WL 926272 (D. Ore. 2002), a case Defendants cited in their Motion to Dismiss, on the ground that the case involved decisions by the employer "concerning whether to pay wages for time employees spent preparing to work [that] had only an extremely indirect connection to the administration of the ERISA plan and, therefore, did not give rise to a fiduciary duty under the plan." *Stickle*, 2008 WL 4446539, at *18 (quotations omitted). The *Stickle* court, however, makes no effort to explain how that situation differed from the facts before it, which involved very similar off-the-clock time allegations. *Id.*

U.S.C. § 1002(21)(A) (individual is a fiduciary only to the extent he "has any discretionary authority or discretionary responsibility in the administration of such plan"); 29 C.F.R. § 2509.75-8. Indeed, "calculation of . . . compensation credits for benefits" is included in the definition of "ministerial functions" in the regulations. 29 C.F.R. § 2509.75-8. As crediting hours or pay – the sole supposedly "fiduciary" function Defendants allegedly performed – clearly is not a fiduciary function, Plaintiffs' breach of fiduciary duty claim concerning Defendants' purported failure to credit hours fails. Plaintiffs' only response to this argument is to again resort to their nonsensical assertion that whether a breach of fiduciary duty has been adequately alleged may only be assessed after discovery. *See* Opp. at 28. That response is plainly inadequate, and thus Plaintiffs' ERISA breach of fiduciary duty claim must be dismissed. *See*, *e.g.*, *Sharp Electronics Corp. v. Metropolitan Life Ins. Co*. 578 F.3d 505, 512 (7th Cir 2009) (applying *Twombly* standard and affirming dismissal of ERISA breach of fiduciary duty claim where plaintiff's claims were based only on conclusory statements).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted in its entirety.

Respectfully submitted,

CARITAS CHRISTI, et al.,

By their attorneys,

 /s/ Richard L. Alfred
Richard L. Alfred (BBO # 015000)
Barry Miller (BBO # 661596)
Sarah N. Turner (BBO # 664488)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:   (617) 946-4800
DATED: December 30, 2010            Telecopier:   (617) 946-4801

| CERTIFICATE OF SERVICE |
|---|
| I hereby certify that on December 30, 2010, this document was filed through the Court's ECF system and that Plaintiffs' counsel includes registered users designated to receive Notices of Electronic Filings in this matter.<br><br>　　　　　　/s/ Richard L. Alfred　　　　<br>　　　　　　　Richard L. Alfred |

12984833v.3